# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Civil Docket No.

Joseph P. Schmitt, pro se,
Plaintiff,

v.

Jeffrey Smith,
William Grossi,
Peter Allen,
Michael T. Maloney,
William Faria,
Ernest Therien,
MA. Department of Correction,
Defendants

# COMPLAINT

## Introduction

This is an action for damages pursuant to 42 U.S.C. §1983, declaratory judgment pursuant to G.L. c. 231A, and equitable relief pursuant to G.L. c. 214 §1, brought by

Commissioner of the Commonwealth's Department of Correction. He is sued in both his official and individual capacities.

6    Defendant William Faria is the disciplinary hearing officer who presided at the disciplinary hearing at issue in this case. He is sued in both his official and individual capacities

7.    Defendant Ernest Therien is the disciplinary department Sergeant at MCI-Cedar Junction. He is sued in both his official and individual capacities.

8.    Defendant Ma. Department of Correction is an agency of the Commonwealth. This defendant is sued in its official capacity.

## FACTS

1.    On or about March 20, 2002, while plaintiff was imprisoned at MCI-Cedar Junction, he was charged with a prison disciplinary offenses. These offenses were set out in a written disciplinary report numbered 02-0563. The disciplinary hearing record, which includes the disciplinary report, Request for evidence form, evidence produced to inmate form, Notice of Disciplinary Hearing form, Exhibit 'A' in part only, Correspondence to Sgt. Ernest Therien dated 2-24-02, Correspondence to Peter Allen dated March 21, 2002, Results of Appeal, and disciplinary

hearing summary, is attached to this complaint as exhibit "A".

2.    The charges in the disciplinary report accuse the plaintiff of writing child porn type story and mailing it to Joseph Chavez.

3.    The disciplinary hearing was held at MCI-Cedar Junction on or about April 2, 2002. Defendant William Faria was the only person on the disciplinary board.

4.    Upon my arrival at the designated area of the hearing, I noticed the lack of my requested witness, defendant Jeffrey Smith. Plaintiff questioned the hearing officer whom responded by informing me that the disciplinary office did not receive my request for witness form. I request that my intended witness be summoned to the hearing. This request was denied. Plaintiff further requested an impartial hearing officer stating that the present hearing officer was a named and served defendant in civil actions and/or was made aware that he was being sued. This request was denied also by defendant William Faria. Facing a highly prejudice hearing I decided to excuse myself and informed the hearing officer that I was not guilty and would pursue the matter in a court of law.

5.    The disciplinary officer, defendant William Faria prepared a written decision. Its complete

statement of evidence relied upon to support the finding of guilt was as follows: "A guilty finding has been established based primarily on the reporting officer's detailed report and exhibit A. Inmate Schmitt's refusal to enter a plea or participate with this hearing has drawn an adverse inference against him. Consequently, the reporting officer's report and physical evidence has been accepted as an accurate account of events. Thus, it has been determined that inmate Schmitt authored a letter containing an explicit sexual story pertaining to sexual acts with children. Exhibit A. reflects a sexually explicit story involving sexual acts with children - Consequently, based on this information, it has been determined that inmate Schmitt authored this sexually explicit material and attempted to send it through the mail(s)."

6.    The disciplinary board's complete statement of reasons for the sanction was: "The impose sanction serves to advise inmate Schmitt that the sending of such material is not authorized. Such material clearly clearly violates departmental rules. Furthermore, such behavior is detrimental to the rehabilitation of inmate Schmitt and to the public safety. Hopefully, inmate Schmitt will revaluate his personal goals and intentions while incarcerated at MCICJ."

7.    The disciplinary officer, defendant William Faria found plaintiff guilty of violating prison disciplinary

Rules Number (2) violating Any departmental Rule or Any other Rule, Regulation, or condition of an institution or community based program.

8.    The disciplinary officer, defendant William Faria dismissed prison disciplinary Rules Numbers (8) Conduct which disrupts or interferes with the security or orderly running of the institution, and (33) Attempting to commit any of the above offenses, making plans to commit any of the above offenses, or aiding another person to commit any of the above offenses shall be considered the same as the commission of the offense itself. Said prison disciplinary Rules were dismissed for the folling Reason: "Not established"

9.    The plaintiff filed an administrative appeal on his disciplinary conviction and associated sanctions, with defendant Superintendant Peter Allen on an undetermined date, which was denied. Plaintiff has repeatedly requested a copy of all documents related to this and other disciplinary reports but officials of the defendant MA. Dept. of Correction have failed to comply as of the penning of this complaint. Plaintiff has full intention of filing motions to compel defendants to produce documents pertaining to this complaint.

10.    On or about March 20, 2002 plaintiff sent a written request to defendant Ernest Therien, who is the disciplinary Sergeant at MCI-Cedar Junction,

to produce documentary evidence, physical evidence and witness/reporting officer.

11.   On or about March 22, 2002 plaintiff was served the attached Evidence Produced to Inmate form with a copy of the envelope used to mail my letter/story to Joseph Chavez and a copy of the 9 page letter/story. Plaintiff was denied "all written reports", "the names and titles of every person involved with this illegal d-report", and "copy of this form".

12.   During the disciplinary hearing the disciplinary officer, defendant William Faria alleged that plaintiff's written request for witness was not received. Plaintiff submitted a written request for evidence form and written request for witness/reporting officer form via institutional mail to Sgt Ernest Therien. It is very unlikely that one form should be lost while the other, attached, form is delivered. Plaintiff used a sealed envelope to mail the forms which makes both forms in effect attached.

13.   Disciplinary Report alleges that plaintiff's "letter contained an explicit sexual story pertaining to sexual acts with a child..." This is a misleading allegation due to the fact that plaintiff made it very clear in his one page March 13, 2002 letter to his friend, who is an adult homosexual male, that the attached story is about a his youth. Also at the very beginning of the eight page story plaintiff very clearly indicated, "Rain Dance:

A true story of my youth. Joseph P. Schmitt age 12ish."
In all factual reality the noted story can be described as
plaintiff's "coming out" story. Plaintiff is a bisexual adult male
and being able to freely express his feelings and past sexual
adventures is a guaranteed right of the United States of
America's Constitution under the First Amendment.

14.    Plaintiff states that defendants relied on
a disciplinary rule that is unconstitutionally vague and
overbroad which resulted in the plaintiff's constitutional
rights being infringed.

15.    The plaintiff has an established right to
have notice or warning that his contiplated actions will
violate a rule, policy, or law. See <u>Reeves v. Pettcox</u>
<u>19 F. 3d 1060 (5th Cir. 1994)</u>... "Inmate is entitled to prior
notice or fair warning of proscribed conduct before
severe sanctions may be imposed." I was not aware of
any State, Federal or Institutional rule, policy or law that
forbids my specific actions and therefore defendants did
violate my Due Process and Freedom of Speech right
of both US Constitution and Massachusetts Declaration
of Rights.

16.    In, <u>Byerly v. Sohley</u> <u>852 S.W. 2d</u>
<u>286 (1992)</u> was held that, "although prison inmates
facing administration disciplinary procedings do not
have the same procedural safeguards as a person facing
criminal prosecution, but fundamental fairness still

requires that the evidence be reliable". In this case the evidence is not reliable due to the failure of proper notification that plaintiff contemplated actions would in fact violate any disciplinary rule set forth in 103-CMR-430 Disciplinary Proceeding which have statutory authorization pursuant to M.G.L. c.124, §1 (b), (i) and (g), M.G.L. c. 127, §33 and have the force of Law.

17.    Nowhere in 103-CMR-430, Disciplinary Proceedings, does it clearly indicate that plaintiff's authoring private and true story of his youthful sexual coming out is a violation for which he may receive loss of liberties. See Exhibit B, 103-CMR-430, attached to this complaint.

18.    In, U.S. v. Guthrie, 789 F2d 356 (5th Cir. 1986), Constitutional Law key 257, states; For the Government to punish a person because he has done what the law plainly allows him to do is a Due Process violation of the most basic sort.

19.    In, Loggins v. Delo, 999 F.2d 364 (8th Cir. 1993), "Letter by prison inmate to brother in which some unkind remarks were made about the female mailroom officer did not implicate "security concerns," and thus, imposition of disciplinary action on inmate for such a letter violated the prisoner's First Amendment."

20.    Plaintiff has the right under the U.S. Constitution against invasion of his privacy by the

GOVERNMENT. SEE, <u>Rimie v. City of Hedwig Village,
Texas, 765 F2d 490 (5th Cir. 1985)</u>. And, <u>Whalen v.
Roe, 429 US 589, 51 LEd2d 64, 97 S Ct 869 (1977)</u> "The
Constitution protect individuals against invasion of their
privacy by the government."

21.    Defendants excessive monitoring of plaintiffs
incoming and outgoing mail, as well as withholding mail from
being delivered violates the plaintiff's First Amendment
Right. SEE, <u>Bieregu v. Reno, 59 F.3d 1445 (3rd Cir.
1995)</u> ... " 1) Prisoners do not forfeit their First Amendment
rights to use the mails ... 2) In the context of the First
Amendment and prison mail, "censorship" means altering or
withholding delivery of particular letter".

22.    "As a general principle, the First Amendment
bars the government from dictating what we see or
read or speak or hear, but the Freedom of speech has its
limits; it does not embrace certain categories of speech,
including defamation, encitement, obscenity and
pornography produced with real children. U.S.C.A.
Constitution Amendment one". <u>Ashcroft v. Free Speech
Coalition, 122 S.Ct 1389 (2002)</u> Note (6) Constitutional
Law key 90 (1,3).

23.    Though the Ma. Department of Correction
may, or may not have the constitutional liberty granted
by the courts to censor incoming matter as such to
maintain good order and/or rehabilitation, it is the

declaratory judgment before this court to determine if
the defendants have the constitutional right to suppress
and punish, by the loss of state created liberties, such
personal expressions of free speech and expression
granted the plaintiff under the First and fourteenth
US Constitutional amendments.

24.   In, Gooding v. Wilson, 405 US 518, 31
L.Ed 2d 408, 92 S.Ct. 1103; Note (3) Constitutional
Law Key 90 (1) "Constitutional guarantees of freedom
of speech forbid states to punish use of words or
language not within narrowly limited classes of speech.
Amendment (1 and 14). Note (4) Constitutional Law Key
90 (1), Statutes punishing use of words or language must
be carefully drawn or authoritatively construed to
punish only unprotected speech and must not be susceptible
to application to protected expression, Amendment number
one".

25.    In, Procunier V. Martinez, 416 U.S. 396, 40
L.Ed 2d 224, 94 S.Ct. 1800 (1974), the Supreme Court
recognized that, "the legitimate governmental interest in the
order and security of penal institutions justifies the imposition
of certain restriction on inmate correspondence [,]" id. at
412-13, but held that, "the limitation of First Amendment
freedoms must be no greater than is necessary or essential
to the protection of the particular governmental interest
involved." Id at 413. The Court indicated that prison officials

could censor outgoing mail that contained contraband or evidence of other illegal activity. Id. The Court, however, stated that "prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." Id. The Court invalidated regulations that precluded inmates from sending letters that "unduly complain' or 'magnify grievances', ... and matter deemed 'defamatory' or 'otherwise inappropriate [,]" because the officials had "failed to show that these broad restrictions on prisoner mail were in any way necessary to furtherance of a governmental interest unrelated to the suppression of expression." Id. at 415.

26.    In, Thornburgh v. Abbott, 490 U.S. 401, 104 L. Ed. 2d 459, 109 S Ct. 1874 (1989), the Court explained that "outgoing personal correspondence from prisoner – – did not, by its very nature, pose a threat to prison order and security." Id. at 411.

27.    Defendants actions not only infringed upon plaintiff's first and fourteenth amendment of the US. Constitution but also infringed upon the rights of the intended recipient of the letter and story for which this action is based on. See, Hall v. Curran, 818 F.2d 1040 (2nd Cir 1987) "A pointed case on censorship and the inextricably messed rights of both the writer and intended recipient of mail".

28.    In, Phelps v. U.S. Federal Goverment, 15 F.3d 735 (8th Cir. 1994), and Griffen v. Lombardi,

946 F.2d 604 (8th Cir. 1991), it is shown that; "1) Prison inmates have a recognized First Amendment interest in receiving mail. 2) Prisoners constitutional Rights to send and receive mail may be restricted only for legitimate penological interests."

29.    In, Sanjour v. E.P.A. 56 F.3d 85 (DC. Cir. 1995), it states; "Government may not regulate speech on the grounds that it expresses a dissenting view-point."

30.    In, Cromer v. Brown, 88 F.3d 1315 (4th Cir 1996), it states; "Right to associate to express one's views is "inseperable" from right to speak freely."

31.    In, Owen v. Wille, 117 F.3d 1235 (11th Cir. 1997), "Prisoners retain First Amendment Rights."

32.    In, Wolff v. McDonnell, 94 S Ct 2963, 2974, 41 L. Ed 2d 935 (1974), "Prisoners are not wholly stripped of their constitutional Protected Rights..."

33.    In, Giano v. Senkowski, 54 F.3d. 1050 (2nd Cir 1995), "Prison walls are not a barrier seperating inmates from protections of Constitution."

34.    The Fifth Circuit has expressly held that it is a violation of due process to punish inmates for acts which they could not have known were prohibited. Adams v. Gunnell, 729 F.2d. 362, 369-70 (5th Cir. 1984) An inmate is entitled to prior notice, or "fair warning", of proscribed conduct before a severe sanction may be

imposed. Id. "Because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 US 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).

35.    The practice of monitoring plaintiff's personal mail is evidenced by exhibits used by defendant. Ma. Department of Correction against plaintiff in 1999 civil actions filed at Suffolk Supperior Civil Court. There can be no suggestion that defendants are doing so for purely penological interests. Plaintiff has filed numerous institutional grievances against Ma. D.O.C. officials tampering with, delaying of, and withholding his mail, both incoming and outgoing.

36.    Plaintiff has received disciplinary reports for vulgar comments about the author of two such reports. It should be noted that the reports were based on the same letter I attempted to mail and said reports were spaced approximately 7-10 days apart. This is one of numerous examples of the extent of mail abuse the plaintiff has suffered primarily at MCI-Cedar Junction by the "IPS", and special investigator Sgt Stephen Kennedy.

37.    Plaintiff also states to this Court the fact that he originally filed a civil action on this

specific incident in Suffolk Superior Civil Court back
on 6-11-2002. The case was wrongly dismissed based on a
motion plaintiff filed regarding all other actions previously
filed. Plaintiff had spent a large sum of money to serve
the seven defendants only to have the case dismissed.
Plaintiff filed numerous motions and Judicial complaint
to Right this unwarrented miscarriage of justice. He has
gained no relief. Furthermore, all his case files were
confiscated by Ma. Dept of Corr. officials at MCI-Cedar
Junction and for nearly 18 months plaintiff has tried
to obtain justice and the return of said 6-8 civil action
case files so he can reconstruct new cases to file in US
District Court. Plaintiff has, as of February 9th, 2004,
mailed a civil action in the nature of Certiorari to
Suffolk Superior Civil Court regarding the Ma. DOC and
its employees, many named defendants, confiscating his
legal papers and depriving him the means to file a meaningful
action against said individuals and agency. Plaintiff is
able to file this action only because he did not have the
time to file more than a complaint and the letter in question
in the law suit. He depends on memory for the most part,
and hope that this court will order the lower Court
and/or Ma D.O.C. Legal to produce documents.

   38.   Defendant William Faria states, "Such
material clearly clearly violates departmental rules", in
his written "Reason for Sanction". See Exhibit A. Plaintiff

is a REASONABLY intelligent Adult MALE, yet when he reads 103-CMR-430 he is unable to locate any disciplinary offense that "CLEARLY CLEARLY" indicates that my Actions violated departmental RULES.

39.    Based on the fact that MA. Department of Correction and its employees at MCI-CEDAR Junction, including the NAMED defendants in this Action, were Actively seeking any and all information to be used by WORCESTER SUPERIOR Court Assistant District Attorney PETER PRATT in an attempt to commit plaintiff AS A SEXUALLY DANGEROUS PERSON, plaintiff alleges that a "FREE FOR All witch hunt" was ENACTED AND the results were the blatant abuses of plaintiff Constitutionally Protected First and Fourteenth and Eigth AmendmENT Rights.

40.    The imposed sanction at face value is no doubt EXCESSIVE. It is made a CRUEL AND UNUSUAL, AND this was a known and document practice by all NAMED defendants, because plaintiff was in the DepartmENT Disciplinary Unit known as "DDU". This is a seperate building from MCI-CEDAR Junction. It is a high security facility with very limited liberties. Prisoners in this facility have no physical contact at all. When defendants imposed sanctions in this disciplinary Action they knew full well the following facts: 1) plaintiff's prison term would expire on or about August 9, 2002. 2) plaintiff would have to wait one month after the experation of said 12 week sanction to RECEIVE

Radio privilege again. This meant in all reality that I'd be wrapped up with my prison term before I could even be able to obtain a radio. 3) this 12 week loss of Radio, T.V. and phone would effectively deprive me of these privileges up to the date of my release. 4) that such action was in effect _total_ _deprivation_ which is clearly an excessive and cruel and unusual punishment, which would and did have a negative effect on the plaintiff mental health.

41.    Defendant's being in the corrections business clearly have a higher understanding of civil Rights and clearly can not claim no knowledge of a prisoners Rights, especially officials such as defendants Jeffrey Smith, William Grossi, William Faria, Ernest Therien, Peter Allen, Michael T. Maloney and MA Dept of Correction who's every day dealings involve inmates, disciplinary actions, disciplinary appeals, grievances and grievance appeals, and investigations. Defendants acted under color of law and while doing so violated my Rights and continued to allow such abuses to continue. Furthermore, with the possible exception of defendant Jeffrey Smith, every other named defendant had been served with one or more civil Rights actions closely related to this action which in all reality makes them fully accountable for their actions against me both individually and officially.

42.    The fact that the disciplinary hearing was presided over by a defendant surely violates my

plaintiff's due process Right.

43. Plaintiff was punished, excessively, for exercising his constitutional Right of freedom of Speech. See, Thaddeus-X v. Blatter, 110 F.3d 1233 (6th Cir. 1997). "Retaliation against inmate for exercising his or her constitutional rights is itself a violation of Constitutional."

44. Plaintiff alleges that defendants abused 103-CMR-430 to use it as a tool to punish him because he was actively taking legal actions against upwards of 25 MCI-Cedar Junction officials. This in itself is a violation of Constitutional Rights and protections. See, Battle v. Anderson, 447 F. Supp. 516 (S.D. New York 1997), and, Wolfish v. Levi, 439 F. Supp. 114 (S.D. New York 1997), "People are sent to prison AS punishment, not FOR punishment."

45. Collins v. Jordan, 102 F.3d 406 (9th Cir. 1996, "speech that stirs passions, resentments, or anger is fully protected by the First Amendment."

46. Pepperling v. Crist, 678 F.2d 787, 790 (9th Cir. 1982). "Prison officials have no legitimate governmental interest in imposing their own standards of sexual morality on the inmates."

47. Plaintiff must bring up the issue of sexual discrimination because Jeffrey Smith and another IPS officer were monitoring my mail during the latter months of 1999

At which time I was authoring and publishing for financial gain all manner of adult written porn stories, defendant Jeffrey Smith personally delivered mail to me on several occassions and commented on the fact that I earned funds for my writing ability. No disciplinary reports were issued even though it was highly known that I earned funds writing gay, bi, and straight stories. This fact was noted in defendants motions to dismiss plaintiffs 1999 civil actions filed in Suffolk Superior Civil Court. It is obvious that the chain of command is a work in the department of correction MCI-Cedar Junction facility so what Jeffrey Smith discovers it surely works its way to the IPS Commanders knowledge then higher to the Superintendent's knowledge, and so on. Years later, I'm returned to this facility and because I exersize my right of freedom of speech and/or expression; I receive several disciplinary actions for writing and possessing sexual stories involving imaginary youth males and adult males, and in the instant case, a true story of plaintiff first consensual boy to boy sexual encounter. Clearly this is more than a mere coincidence.

48.     Defendants allege the story, RAIN DANCE, which is the story this action is based upon, is child pornography. Neither State statutes, Federal U.S.C.A. or the Omnibus Appropriation Act of 1997, Sec 121, cited as the Child Pornography Prevention Act of 1996, (CPPA)

Classifies such written matter as child pornography because it records no crime nor creates no victim by its production and has not been found to be intrinsically related to the sexual abuse of children, thus retaining full protection under the first Amendment. Under; Law of 104th Congress, 2nd Session P.L. 104-208, Omnibus Appropriation Act of 1997, 110 Stat. 3009-26, 27, and 28, Sec. 121, Subsection 2. Definition, Sec. 2256 of title 18, United State Code (8) child pornography mean; any visual depictions, or generated images of sexually explicit conduct involving minors. This entire section of Sec. 121, the law of the 104th Congress deals directly with child pornography and in its construction is void of any and all construction pertain to written expression of such material.

49.    In *New York v. Ferber*, 102 S.Ct. 3348 (1982) constitutional Law Key 90.1 (1) states; "Distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which does not involve live performance of photographic or other visual productions to to live performances by children retains First Amendment protection. U.S.C.A. Amendment 1."

50.    In *Hause v. Comm of KY*, KY App 83 S.W. 3d. 1, Key note (10) "In a prosecution brought against an individual of violating a statute prohibiting distribution of matter portraying sexual performances by a minor, it is is incumbent upon the Commonwealth to prove beyond

A REASONABLE doubt that the person depicted in the matter protraying a minor in a sexual performance is a real person. KRS 531.340"

51.    IN Ashcroft v. Free Speech Coalition, 122 S.Ct. 1389 (2002) Note (5) Constitutional Law Key 90(1), "Speech may not be prohibited because it concerns subjects offending sensibilities. Also in Constitutional Law Key 90 (3) note (24), the government may not surpress lawful speech as the means to surpress unlawful speech, and protected speech does not become unprotected merely because it resembles the latter. Amendment 1."

52.    IN Lamont v. Postmaster General, 381 U.S. 753, 762-765, 92 S.Ct. 2576, 2581-2583, 33 L.Ed 2d 683 (4) (5) "In the case of direct personal correspondence between inmates and those who have a particularized interest in communicating with them, mail censorship implicates more than the right of prisoners. Communication by letter is not accomplished by the act of writing words on paper, rather, it's effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of that communication between them necessarily impinges on the interest of each. Whatever the status of a prisoners claim to uncensored correspondence with an outsider, its plain that the latter's interest is grounded in the First Amendment guarantee of freedom

of Speech. And this does not depend on whether the non prisoner correspondent is the author or intended recipient of a particular letter for the addressee as well as the sender of a direct personal correspondence derives from the First and fourteenth Amendment, a protection against unjustified governmental interference with the intended communication."

53.   Coffin v. Reinhard, 143 F 2d 443, 445 (CA.6 1944). " A prisoner does not shed such basic first Amendment rights at the prison gate, rather, he retains all the rights of an ordinary citizen except those expressly, or necessary implication, taken from him by Law."

54.   Procunier v. Martinez, 416 US 396 40 L.Ed. 2d 224, 94 S.Ct 1800, "Accordingly, prisoner are entitled to use the mail as a medium of free expression not as a privilege, but rather as a constitutional guaranteed right."

55.   The plaintiff also alleges 103-CMR-430, offense code number 2, as applied in exhibit A, is in violation of both the first and fourteenth Amendment by being ambiguously vague. Also, the mere vage construction of said offense code number on its face is in violation of both the First and Fourteent Amendment by being ambiguously vague in its construction and application, which can and has easily interpreted and manipulated by prejudice without supportive legitimacy. Governmental

purpose to control or prevent activities constitutionally subject to state regulations may not be achieved by means which sweep unnecessarily broadly and thereby invade areas of protected freedoms. Constitutional Law Key 254 Note (6) Statutes is void vagueness which forbids or requires doing an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ in its Application. Note (5) Statuto Key 47; Zwiehler vs. Koota, 389, US 241 88 S.Ct. 391

56.    In its mere vagueness, 103-CMR-430 offense code number 2 constitutes the enforcement of the First Amendment overbreadth doctrine. The Court itself should recognize, the First Amendment overbreath doctrine allows the court to invalidate statutes because the language demonstrates their potential for sweeping improper application posing a significant likelihood of deterring important First Amendment speech.

57.    By failing to set out "explicit standards" for those who must apply 103-CMR-430 offense code number 2, it is capable of application which prohibits speech that is clearly protected by the First Amendment, this infringes upon the protected rights of inmates it is implicated against.

58.    Defendant Peter Allen showed deliberate indifferance with his generic and very often used Appeal response, "appeal denied. No merit." Plaintiff has received

the same identical response on all his appeals. This violates the due process, and other policies and enactments.

# CLAIMS FOR RELIEF

1.    The actions of the defendants violated the plaintiff's due process rights as established by 103-CMR-430 et seg., which are the disciplinary regulations of the Department of Correction. These regulations are promulgated pursuant to the state Administrative Procedure Act and have the force of law. These regulation are attached to this complaint as Exhibit B.

2.    The actions of the defendants violated the plaintiff's due process rights as guaranteed by the Massachusetts Declaration of Rights.

3.    The actions of the defendants violated the plaintiffs first amendment right under the U.S Constitution, Freedom of Speech.

4.    The actions of the defendants violated the plaintiff's 14 amendment right under the U.S Constitution, Due process.

5.    The actions of the defendants violated the plaintiffs Freedom of speech rights as guaranteed by the Massachusetts Declaration of Rights.

6.    The actions of the defendants violated

Plaintiff's U.S. Constitutional Right Against sexual discrimination.

7. The actions of the defendants violated Plaintiff Right Against sexual discrimination guaranteed by the Massachusetts Declaration of Rights.

8. The actions of the defendants violated plaintiff's US Constitutional Amendment Right Against cruel and unusual punishment.

9. The actions of the defendants violated plaintiff's guaranteed right against cruel and unusual punishment by the Massachusetts Declaration of Rights.

10. The actions of the defendants, who are state officials acting under color of Law, violated 42. U.S.C. §1983

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff requests this Honorable Court:

1. Declare that the actions of the defendants violated the laws of the Commonwealth of Massachusetts, the Massachusetts Declaration of Rights, and the Constitution of the United States.

2. Enjoin defendants to expunge the above-related disciplinary conviction from plaintiff's prison

RECORDS AND to RETURN the EVIDENCE to plaintiff;

　　　3.　GRANT plaintiff equitable RELIEF pursuant to G.L. c. 214 §1,

　　　4.　GRANT damages to the plaintiff pursuant to 42 USC. 1983 AND the Massachusetts Declaration of Rights for the sanctions that he suffered.

　　　5.　GRANT plaintiff costs AND ATTORNEYS fees; AND

　　　6.　GRANT such other AND further RELIEF AS this Court DEEMS just AND proper.


Respectfully Submitted,

Joseph P. Schmitt, pRO SE
MA. TREATMENT CENTER
30 Administration RoAd
BRidgewATER, MA.
02324-3230

Dated: FEBRUARY 20, 2004