UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10451-RWZ

JOSEPH SCHMITT,
    Plaintiff,

v.

JEFFREY SMITH, et al.,
Defendants.

## DEFENDANTS' SUPPLEMENT TO THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGEMNT

Former inmate Joseph Schmitt ("Schmitt") challenges, inter alia, the procedure by which he was found guilty of and punished as a result of the infractions set forth in Disciplinary Report No. 02-0563 while he was incarcerated at MCI-Cedar Junction.[1] He further alleges that his free speech rights were violated, in that his outgoing mail was censored, and that his due process rights were violated because the Department's regulations are vague, and thus, he had no notice that mailing out the material in question is prohibited under the Department's rules.[2] (Compl. at 4, 13, 15, 17.) Specifically, Schmitt's outgoing mail, which contained graphic descriptions of unlawful sexual acts between twelve year old boys, was censored, and Schmitt was disciplined as a result. (Disc. Report No. 02-0563, attached hereto as Ex. A.)

---

[1] The named defendants are the Massachusetts Department of Correction ("Department"), Michael Maloney, the former Commissioner, Peter Allen, the former Superintendent of MCI-Cedar Junction, Ernest Therien and William Faria, respectively the disciplinary officer and hearing officer at MCI-Cedar Junction, and Jeffrey Smith and William Grossi, then both Inner Perimeter Security ("IPS") officers at the institution (collectively as "Department Officials"). Each is purportedly sued in their official and individual capacities. Michael Maloney, although named as a defendant, was never served. See infra.

[2] He further argues that the sanction imposed was excessive, thereby constituting a violation of the Eighth Amendment, and that he was sexually discriminated against because the stories which he writes include all manner of adult written pornography. (Compl. at 38, 47.) These identical issues have already been addressed by this Court in its Memorandum of Decision at 7-8 in Schmitt v. Mulvey, C.A. No. 04-10717 and were dismissed as having no merit.

2

For the reasons that follow and those that are contained in the defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment ("Motion to Dismiss"), this Court should find for the defendants on all counts.

**I.      THE DEPARTMENT OFFICIALS ARE ENTITLED TO QUALIFIED IMMUNITY.**

As previously discussed in the Motion to Dismiss, the Department Officials in their individual capacities are entitled to qualified immunity.

The doctrine of qualified immunity seeks to protect government officials from the burdens of vindictive and harassing lawsuits which may inhibit them from properly exercising their powers, while, at the same time, protecting private citizens from oppressive or malicious government action. Knight v. Mills, 836 F.2d 659, 665 (1st Cir. 1987) (citation omitted). Furthermore, because qualified immunity is a shield against the burdens of litigation, not merely a defense against liability for money damages, relief on such grounds should take place prior to trial. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (deciding case at summary judgment state).

The United States Supreme Court has held that government officials performing discretionary functions are shielded with a qualified immunity "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The analysis of a state actor's claim of qualified immunity requires a court to utilize a three-part test. Saucier v. Katz, 533 U.S. 194 (2001). The initial inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. The second inquiry is whether the right was clearly established at the time of the alleged violation. The third inquiry is whether a reasonable actor,

3

similarly situated, would have understood that his conduct violated that clearly established right. Saucier, 533 U.S. at 201.

The constitutional right must be asserted with sufficient particularity. Anderson, 483 U.S. at 639 (courts warned against using generalized definitions of constitutional rights in qualified immunity inquiry). If plaintiff's allegations establish a constitutional violation, it must then be determined whether the constitutional right was clearly established at the time of the defendant's actions to ensure that the state actor had "fair warning" that the alleged action was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 740 (2002) (officers sued in a civil action for damages have the same right to fair notice as do defendants charged with a criminal offense); Saucier at 202 ("The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). The Supreme Court has determined that the inquiry into whether the constitutional right was clearly established must take into consideration the particular circumstances at issue in the case. Id. at 201 ("this inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition"). Next, if plaintiff shows that the constitutional right at issue was clearly established, the qualified immunity inquiry focuses on whether an objectively reasonable official in defendant's position would have understood that the alleged action violated plaintiff's rights. Id. at 208 ("The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards.").

Qualified immunity is available to a state actor who violates a clearly established right if he acted under the mistaken but reasonable belief that his actions were lawful. See Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity leaves "ample room for mistaken

judgments" and protects "all but the plainly incompetent or those who knowingly violate the law"); <u>Wilson v. Layne</u>, 141 F.3d 111, 114 (4th Cir. 1998) (qualified immunity protects law enforcement officers from "bad guesses and gray areas" and ensures that they are liable only "for transgressing the bright lines."). This is consistent with the purpose of qualified immunity to avoid chilling official action by exposing officials to personal liability for good faith judgments. <u>Harlow</u>, 457 U.S. at 814-15.

### A. Disciplining Schmitt For Attempting To Mail Out Material That Encourages Or Instructs In Criminal Activity Did Not Violate His Due Process Rights.

Schmitt contends that his due process rights were violated because the Department's regulations were vague, and thus, he was not aware that his actions violated any rule which would result in discipline. (Compl. at 17, 38.) His contention is without merit.

Schmitt's disciplinary hearing did not violate any due process rights because under the Constitution, an inmate is entitled to the protections of the due process clause only when an existing liberty or property interest is at stake. A liberty interest is infringed only if the punishment inflicted upon the inmate imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Connor</u>, 515 U.S. 472, 484 (1995).

As previously discussed, Schmitt's sanction of a twelve week loss of television, radio, and telephone privileges did not impose an "atypical and significant hardship in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (thirty days in segregated confinement not atypical). Consequently, Schmitt had no liberty interest to which due process

5

requirements might attach, and in any event, he received all of the process that he was due as set forth in Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974).[3]

Schmitt can point to no established law holding that a liberty interest can arise from a disciplinary sanction that does not rise to the level of an atypical and significant deprivation. See Sandin at 486 ("Connor's discipline in segregated confinement does not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Accordingly, even assuming, arguendo, that the Department improperly disciplined Schmitt for violating a prison rule, this would not, by itself, constitute a violation of his due process rights. See, e.g., Santiago v. Khan, Worc. C.A. No. 02-2632, Memorandum of Decision and Order on Cross Motions for Judgment on the Pleadings (Page, J.) (Dec. 15, 2004) (affirmed, Santiago v. Khan, 05-P-328 (Kafker, Cohen & Trainor, JJ.) (Dec. 23, 2005) (absent sanctions amounting to atypical and significant deprivation, improper extension of inmate's disciplinary sanction does not give rise to a federal constitutional due process claim)).[4]

Accordingly, because the sanction which was imposed did not implicate Schmitt's due process rights as set forth in Sandin, and because the Department Officials nevertheless provided him with all of the due process as set forth in Wolff, Schmitt's due process rights were not violated, and the Department Officials are entitled to qualified immunity.[5]

---

[3] Federal due process concerns require that a prisoner facing disciplinary charges that may result in the loss of liberty receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense; (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454 (1985) (citing Wolff v. McDonnell, 418 U.S. 539, 563-567 (1974)). There need be only **some** evidence in the record to support the hearing officer's decision. Hill, 472 U.S. at 454.

[4] The decisions are attached to Defendants' Motion for Reconsideration in Schmitt v. Mulvey, C.A. No. 04-10717.

[5] Since the first inquiry has unquestionably been met, it is unnecessary to proceed to the second and third inquiries under Saucier.

6

**B.  Censoring Schmitt's Outgoing Mail, Which Contained Material That Encourages Or Instructs In Criminal Activity, Did Not Violate His Free Speech Rights.**

Schmitt contends that the censorship of the material violated his rights to free speech. (Compl. at 13.)  His contention is inaccurate because the censorship was clearly permissible under the standard set forth in Procunier v. Martinez.

The United States Supreme Court in Procunier v. Martinez unmistakably indicated that reading and censorship of inmate mail is a constitutionally acceptable practice:

> [The] legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence.  Perhaps the most obvious example of justifiable censorship of prisoner mail would be refusal to send or deliver letters concerning escape plans or containing other information concerning proposed criminal activity, whether within or without prison.

416 U.S. 396, 412-13 (1974).

The Procunier Court determined that with regard to the censoring of outgoing inmate mail, the question is whether the censorship furthers "one or more of the substantial governmental interests of security, order, and rehabilitation" and is "no greater than is necessary or essential to the protection of the particular governmental interest involved."  416 U.S. at 413. Furthermore, the Court specifically noted that personal correspondence that included the following kinds of material, as set forth in Policy Statement 7300.1A of the Federal Bureau of Prisons, could be censored:  (1) that which might violate postal regulations, e.g., threats, blackmail, or contraband; (2) that which indicates a plot to escape; (3) that which discusses criminal activities; (4) that which indicates that the inmate is running a business while he is in confinement; or (5) that which contains codes or other obvious attempts to circumvent legitimate prison regulations.  Id. at 414 n.14.

7

The Department's Inmate Mail regulation[6] permits the reading of outgoing non-privileged correspondence, when authorized by the superintendent, "when in his [her] opinion such action is necessary to prevent the transmission of material and/or information which represents a threat to security, order, rehabilitation or the public safety." 103 CMR 481.14(1). The disapproval of outgoing mail occurs when the mail fails to successfully pass the fluoroscope examination or when "its contents fall as a whole or in significant part into any one of the categories listed in 103 CMR 481.15(2)(a) through (g)." 103 CMR 481.17(1). Among the materials which may be censored from outgoing mail is material which "Encourages or instructs in the commission of criminal activity." 103 CMR 481.15(2)(f).[7]

Schmitt challenges the rule which permits the Department to censor his outgoing mail that encourages or instructs in the commission of criminal activity, in this case material involving the sexual abuse of a twelve year old child, including unnatural sexual intercourse, acts which constitute Unnatural and Lascivious Acts With a Child Under Sixteen, pursuant to G.L. c. 272, § 35A,[8] and Rape of a Child under the laws of the Commonwealth. Rape of a Child is defined as follows:

> Whoever unlawfully has sexual intercourse or unnatural sexual intercourse,[9] and abuses a child under sixteen years of age shall, for the first offense, be punished by imprisonment in the state prison for life or for any term of years, or, except as otherwise provided, for any term in a jail or house of correction.

---

[6] The Inmate Mail regulation is attached to the Motion to Dismiss.

[7] Thus, the Department's regulation, compared to the Federal prison's rule, of which the Procunier Court approved, is a more narrowly constructed rule.

[8] Evidence of penetration differentiates the act of rape of a child from other prohibited sexual touchings or conduct such as assault and battery on a child under sixteen with intent to commit rape, indecent assault and battery on a child under fourteen, or unnatural and lascivious acts on a child under sixteen. Commonwealth v. Nylander, 2 Mass. App. Ct. 909 (1989).

[9] Unnatural sexual intercourse refers to oral and anal intercourse, including fellatio, cunnilingus, and other intrusions of part of a person's body or other objects into the genital or oral opening of another person's body. Commonwealth v. Gallant, 373 Mass. 577 (1977).

8

G.L. c. 265, § 23.

The censored material contained a story that Schmitt had written entitled, "Rain Dance." The censorship of this material clearly fell within the Department's regulation.[10] In the guise of a story purported to be a true story of his youth, Schmitt has yet again attempted to send out material that promotes the sexual exploitation and abuse of children. The story, which describes the subtle "seduction" by a twelve year old boy of another twelve year old boy, encourages, inter alia, the crimes of Unnatural and Lascivious Acts With a Child Under Sixteen and Rape of a Child[11] by eroticizing and glamorizing the crimes and by making the acts appear consensual.[12] Furthermore, the material encourages adults to believe that it is appropriate for children to have sex and to be seen as sexual beings, thereby encouraging not only the crimes discussed above, but also the crimes of Enticing to Unlawful Intercourse, pursuant to G.L. c. 272, § 4, and Matter Harmful to Minors, pursuant to G.L. c. 272, § 28. Accordingly, given that the censored material clearly encourages or instructs in the commission of criminal activity, the Department Officials did not violate Schmitt's rights, as enumerated in Procunier.

Moreover, Schmitt's argument that he had no notice of the rule, in violation of his due process rights, is without merit, given that the rule which permits censorship of such materials is a promulgated regulation. Consequently, it is clear that the Department Officials did not violate Schmitt's rights as a result of censoring the material at issue.

---

[10]  A state agency's reasonable interpretation of its own regulations is entitled to substantial deference and a presumption of validity. See Bynes v. School Committee of Boston, 411 Mass. 264, 269 (1991); Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 782 (1980).

[11]  "There is no presumption in Massachusetts that a child under the age of fourteen is incapable of committing rape." Commonwealth v. Walter, 414 Mass. 714, 720 (1993).

[12]  Consent is not a defense to the charge of statutory rape. Commonwealth v. Elder, 389 Mass. 743 (1983). Nor is it a defense to unnatural and lascivious acts with a child under sixteen. Commonwealth v. Benoit, 26 Mass. App. Ct. 641 (1988).

9

**C.     The Right Was Not Clearly Established With Regard To The Censorship Of An Inmate's Outgoing Mail Which Contains Sexual Behavior That Violates The Law.**

The Department Officials are entitled to qualified immunity where it was not clearly established that the censorship of an inmate's outgoing mail which contains descriptions of sexual behavior that violates statutory law violated any clearly established laws or constitutional rights so as to ensure that the Department Officials had "fair warning" that the alleged action was unconstitutional.

In fact, the converse is true, in that the law, as applied to these facts, is in the Department Officials' favor. As previously discussed, the Procunier Court noted that the censorship of material which discusses criminal activities is an example of the type of material which is essential to the protection of substantial governmental interests. Following approval by the Superintendent based on certain criteria, the regulation permits the censoring of material that encourages or instructs in the commission of criminal activity. By contrast, the Federal Bureau of Prisons's rule, of which the Procunier Court approved as passing constitutional muster, permits the censoring of material that merely discusses criminal activities, without requiring that such materials also encourage or instruct in the commission of criminal activity.

Thus, it cannot be said that the law was clearly established so as to give the Department Officials "fair warning" that censoring Schmitt's materials violated any law or constitutional right. See, e.g., Policy Statement 7300.1A(2) of the Federal Bureau of Prisons (approved by Procunier Court and stating that personal correspondence of inmates in federal prisons, whether incoming or outgoing, may be rejected for inclusion of discussions of criminal activities); Guajardo v. Estelle, 580 F.2d 748, 757 (5th Cir. 1978) (overturning the lower court and upholding prison rule which permitted the censorship of material containing a "graphic

10

presentation of sexual behavior that is in violation of the law" and indicating that the words "graphic presentation" were used in the statute to permit it to cover both writing and drawing).

Accordingly, it is clear that under Saucier, the Department Officials are entitled to qualified immunity because it was not clearly established that censoring the materials in question violated Schmitt's constitutional rights.[13]

## II. SCHMITT'S CERTIORARI CLAIM IS MOOT AND IS BARRED BY THE STATUTE OF LIMITATIONS.

Schmitt's claims concerning his disciplinary hearing must be dismissed as moot, and furthermore, they are barred by the statute of limitations.[14]

When a prisoner challenges the result of an individual disciplinary proceeding, the proper mode of review is an action in the nature of certiorari under G.L. c. 249, § 4. Hill v. Superintendent, MCI Walpole, 392 Mass. 198, 199 n.2 (1984), reversed on other grounds, 472 U.S. 445 (1985); McLellan v. Commissioner of Correction, 29 Mass. App. Ct. 933, 934 (1990). Judicial review of prison disciplinary matters is not "de novo," but rather is based on whether the record contains "substantial evidence" of the plaintiff's guilt. Murphy v. Superintendent, MCI Cedar Junction, 396 Mass. 830, 833 (1986). Judicial review in a certiorari action is "confined to the record and is for the purpose of correcting legal error." Gloucester v. Civil Serv. Comm'n, 408 Mass. 292, 297 (1990) (citations omitted); Wightman v. Superintendent, MCI Walpole, 19 Mass. App. Ct. 442, 444 n.4 (1985).

---

[13] Since the second inquiry cannot be met, it is unnecessary to proceed to the third inquiry, whether a reasonable actor, similarly situated, would have understood that his conduct violated that clearly established right.
[14] Notwithstanding this, as previously discussed, Schmitt's disciplinary hearing did not violate any due process rights.

11

The only relief available to Schmitt in a certiorari action is a remand for a new disciplinary hearing. See Nelson v. Commissioner of Correction, 390 Mass. 379, 398 (1983) ("plaintiffs are entitled, at most, by analogy, to a 'new trial,' free of error"). However, Schmitt is no longer incarcerated. Schmitt's challenge is, therefore, moot because he lacks "a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).

While an exception may be made where an issue is "capable of repetition, yet evading review," the issue must be both too short in duration to be "fully litigated prior to its cessation or expiration" and there must be "a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975). That is not the case here, given that Schmitt is no longer an inmate incarcerated with the Department. Accordingly, judgment for the defendants in this case should be granted on grounds of mootness.

As further grounds, Schmitt's claim should also be dismissed because he failed to file his certiorari action within the 60 day statute of limitations period pursuant to G.L. c. 249, § 4. "Failure to do so is such a serious misstep that such an action must be dismissed when not timely filed, even if the defendants fail to plead the statute of limitations as an affirmative defense." Pidge v. Superintendent, MCI-Cedar Junction, 32 Mass. App. Ct. 14, 18 (1992).

Schmitt's appeal was denied by the Superintendent on April 16, 2002. (See Admin. Record, attached to Mot. to Dismiss.) Thus, he had until June 17, 2002 to file his certiorari claim with this Court. Schmitt's complaint was docketed on March 2, 2004, some 21 months after the expiration of the 60 day period. Schmitt's claim with regard to the disciplinary proceeding must, therefore, also be dismissed on grounds that it is time barred.[15] Thus, Schmitt's claims against

---

[15]   That Schmitt initially timely filed this case in state court is of no import, given that he voluntarily withdrew the case from state court prior to the court's ruling on the defendants' motion to vacate indigency and to dismiss the

12

William Faria, the Hearing Officer, and Ernest Therrien, the Disciplinary Officer, must be dismissed.

### III. ANY CLAIMS AGAINST NAMED DEFENDANT MICHAEL MALONEY MUST BE DISMISSED BECAUSE HE WAS NEVER SERVED.

The complaint against former Commissioner Michael Maloney ("Commissioner Maloney") should be dismissed for lack of service. Fed. R. Civ. P. 4(e) requires service on each individual pursuant to the law of the state in which the district court is located, or by delivering a copy of the summons and of the complaint to the individual personally, or by leaving copies thereof at his last and usual place of abode. Schmitt has failed to effect service on Commissioner Maloney as required by the Federal Rules of Civil Procedure. The return of service filed with the Court indicates that Michael Maloney was never served. (Return of Service, attached hereto as Ex. C.)

Prisoners appearing pro se must adhere to the rules of procedure. "The right of self-representation is not 'a license not to comply with the relevant rules of procedural and substantive law.'" International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 847 (1983) (quoting Faretta v. California, 422 U.S. 806, 834-35 n.46 (1975). Plaintiffs' pro se status does not absolve them from compliance with the Federal Rules of Civil Procedure. U.S. v. Heller, 957 F.2d 26, 31 (1st Cir.

---

complaint for Schmitt's fraud on the court. (See Defs.' Motion to Vacate and to Dismiss Based on Fraud on the Court attached to Defs.' Mot. for Reconsideration in Schmitt v. Mulvey, 04-10717; Docket Sheet, attached hereto as Ex. B.) Although Schmitt states in his Motion for the Court to Order Defendants to Produce a True Copy of Civil Action Number 2002-2562 that he voluntarily withdrew the case because he "felt prejudiced by Suffolk Court," it would appear that his real motivation in withdrawing the case, along with several others, was because he feared that the state court would dismiss the case(s) with prejudice based upon his fraud on the court. In 1999, Schmitt had six of his cases against Department officials dismissed with prejudice for this very reason. (See Order Relative to Defs.' Mot. to Vacate Pl.'s Indigency Status and Mot. for Sanctions/Dismissal (King, J.), attached to Defs.' Mot. for Reconsideration in Schmitt v. Mulvey, 04-10717.)

13

1992). Accordingly, the complaint should be dismissed at to Commissioner Maloney for lack of service.

## IV. SCHMITT HAS NO § 1983 CLAIM FOR DAMAGES AGAINST THE DEPARTMENT OR THE DEPARTMENT OFFICIALS IN THEIR OFFICIAL CAPACITIES.

Schmitt's § 1983 claim against the Department and the Department Officials in their official capacities must fail because it is well settled that a state, or in this case, a state agency,[16] is not a "person" within the meaning of § 1983. As the United States Supreme Court has ruled: "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum to litigants against a State for alleged deprivations of civil liberties." Will v. Michigan Dep't of State Police, 491 U.S. 58, 63 (1989). Accordingly, as a matter of law, the defendant Department and the Department Officials in their official capacities are immune from suit under § 1983.

## V. COMMISSIONER MALONEY AND WILLIAM GROSSI ARE ENTITLED TO DISMISSAL OF THE CLAIMS UNDER § 1983 IN THE ABSENCE OF SUPERVISORY LIABILITY.

A plaintiff asserting a claim of constitutional right violations under § 1983 "must allege that some person has deprived him of a federal right." Gomez v. Toledo, 446 U.S. 635, 640 (1988) (emphasis added). "In order to state a claim under §1983 the claimant must allege facts showing that the conduct complained of was committed by one acting under color of state law." Burgess v. City of Houston, 718 F.2d 151, 154 (5th Cir. 1983). Dismissal is warranted where the complaint fails to present any facts which indicate the specific actions alleged to have been taken

---

[16] Pursuant to the General Laws, the Department is an agency of the Commonwealth within the Executive Office Of Public Safety. G.L. c. 6A, § 18. Our courts have held that a claim against an agency or a public facility of the Commonwealth is, in effect, a claim against the Commonwealth. Woodbridge v. Worcester State Hosp., 384 Mass. 38, 38-39 n.3 (1981).

14

by the defendants.  Kador Corporation v. Milbury, 549 F.2d 230 (1st Cir. 1977).  In Kador, the First Circuit affirmed the lower court's dismissal of the complaint for failure to "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy."  Id at 233.  See also Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988); Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st. Cir. 1983); Glaros v. Peese, 628 F.2d 679, 683 (1st Cir. 1980); Cuddy v. City of Boston, 765 F. Supp. 775, 778 (D. Mass. 1991).

In the instant case, Schmitt's complaint is void of any specific actions taken by Commissioner Maloney or William Grossi which would support the claimed constitutional violations. Nor can these defendants be held liable in their supervisory capacities for the alleged civil rights violations, as it is well settled that the liability of a public employer or supervising official for civil rights violations cannot be predicated on a theory of respondeat superior.  See Polk County v. Dodson, 454 U.S. 312, 326 (1981); Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Hathaway v. Stone, 687 F. Supp. 708, 711 (D. Mass. 1988) (no supervisory liability under G.L. c. 12, §11 I for failure to train, discipline or supervise police officers).  Only under very narrow circumstances may a supervisor be held responsible for the acts of a subordinate.  There must either be some participation or acquiescence by the supervising official in the alleged constitutional deprivations, Delaney v. Dias, 415 F. Supp. 1351, 1354 (D. Mass. 1976), or an "affirmative link" between the conduct of the supervisor and that of the employee.  Voutour v. Vitale, 761 F.2d 812, 880 (1st Cir. 1985), cert. denied, 474 U.S. 1100 (1986); O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 142-143 (1993); Martino v. Hogan,  37 Mass. App. 710, 719-20 (1994), rev. denied, 419 Mass. 1106 (1995).  Further, these acts or omissions must constitute more than mere negligence, but must amount to a reckless or callous indifference to the constitutional rights of others.  Daniels v. Williams, 474 U.S. 327 (1986); Germany v. Vance, 868 F.2d 9, 17-18 (1st Cir. 1989).  No affirmative link

15

between Commissioner Maloney and William Grossi and the claimed civil rights violations has been shown. Here, Schmitt has failed to establish any personal involvement by these defendants, in their individual capacities, in the alleged violation of his civil rights under § 1983. Since Schmitt seeks to hold these defendants liable solely as supervisory officials, they are entitled to the dismissal of the civil rights claim.

## VI.   SCHMITT'S CONSTITUTIONAL CLAIMS REGARDING THE CENSORING OF HIS OUTGOING MAIL ARE MOOT.

As previously discussed, Schmitt is no longer incarcerated as an inmate within the Department, and, therefore, his constitutional claims regarding the censoring of his outgoing mail containing graphic descriptions of unlawful sexual acts are moot. Furthermore, Schmitt is currently being held at the Massachusetts Treatment Center pending the outcome of his currently ongoing civil commitment trial as a sexually dangerous person, and Schmitt concedes that he is not permitted to send out or receive descriptive materials of a sexual nature while housed there. (Pl.'s Opp'n to Mot. to Dismiss at 3.)

## CONCLUSION

For the foregoing reasons, the defendants' motion for reconsideration should be allowed, and the Court should find for the defendants on all counts.

    Respectfully submitted,

    NANCY ANKERS WHITE
    Special Assistant Attorney General

DATED: January 24, 2006    C. Raye Poole

    /s/ C. Raye Poole

16

B.B.O. # 632719
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110
(617) 727-3300 ext. 147

## Certificate of Service

I, C. Raye Poole, counsel for the defendants, hereby certify that on this 24th day of January 2006, I served a copy of the above motion by first class mail, postage prepaid, on the plaintiff, Joseph Schmitt, at his last known address, Massachusetts Treatment Center, 30 Administration Road, Bridgewater, Massachusetts  02324.

/s/ C. Raye Poole
C. Raye Poole