UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

JOSEPH PETER SCHMITT, pro se,
        Plaintiff,

-vs-                          Civil Docket No. 04-10451-RWZ

JEFFREY SMITH, et al.,
        Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS SUPPLEMENT TO THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGEMNT**

1. THE DEPARTMENT OFFICIALS ARE ENTITLED TO QUALIFIED IMMUNITY:

    The defendants can not enjoy qualified immunity because they fail to pass the three part test defendants counsel alleges is in Saucier v. Katz, 533 U.S. 635,638 (1987). 1) "The initial inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation." Plaintiff claims a violation of his right to Free Speech and Due Process. The facts of the complaint clearly establish that the defendants infringed/violated said rights. It can be further claimed that plaintiff's right to privacy and his right against unreasonable search and seizure. 2) "The second inquiry is whether the right was clearly established at the time of the alleged violation." The defendants, specifically those directly involved or employed in the position of Inner Parimeter Security (IPS) and/or disciplinary officers clearly should have a working understanding of the rights of prisoners as well as the laws of the Commonwealth, as well as the U.S. Constitution and the Commonwealth's Declaration of Rights. One would be very hard pressed to believe that in this day and age a public employee of the Department of Correction would blindly take action against an inmate to the extent that was taken upon plaintiff, without having a working knowledge of the forementioned laws and rights. Furthermore, it is only fair to assume that such defendants would have a working knowledge of the very policy allegedly being violated by the plaintiff. 103-CMR-481 Inmate Mail in itself provides the plaintiff with the expectation of privacy, free speech and due process. 3) "The third and

finally inquiry is whether a reasonable actor, similarly situated, would have understood that his conduct violated that clearly established right." Saucier, 533 U.S. at 201.  As explained in the second prong of this inquiry, it would be very difficult to believe that any public employee within the Department of Correction (DOC) conducting an ongoing mail monitor/investigation upon the plaintiff would have a working knowledge of the DOC's mail policy at the very least, and more likely to have a laymans understanding of the right to Free Speech and Due Process and the right against unreasonable search and seizure.

The state actor, the defendants, clearly had "fair warning" that the alleged action was unconstitutional. In a chain of events regarding the issue of plaintiff's mail, the defendants were subject of many grievances, and other correspondence which brought to their attention the fact and/or allegations that their actions were in fact violating plaintiff's rights.  Defendants have admitted in disciplinary reports and other DOC documentation, as well as live testimony during the plaintiff's MGL c. 123A Civil Commitment Trial in Worcester Superior Court that plaintiff was subject of an ongoing investigation. Taking this into consideration one would be extremely hard pressed to believe that the defendants did not share information and learn about plaintiff's allegations of his rights being violated and threats of criminal and/or civil actions. Defendants received ample "Fair Notice" but as evidenced by the repeated disciplinary actions produced against the plaintiff it is obvious they made the decision to continue with their illegal actions which resulted in their being sued in this and related actions before the USDC of Boston.

The defendants blatantly violated the DOC's own mail policy. This clearly indicates that no defendant can be excused of his actions for reasons laid out by defendants counsel. No defendant can claim a mistaken belief that his actions were lawful. There is no "bad guesses or gray areas" in this situation. Defendants acted with deliberate cause and continued to do so long after they were informed verbally and in written form by plaintiff.

Ignorance of the law is not a valid excuse to break it.

2.  DISCIPLINING SCHMITT FOR ATTEMPTING TO MAIL OUT MATERIAL THAT ENCOURAGES OR INSTRUCTS IN CRIMINAL ACTIVITY DID NOT VIOLATE HIS DUE PROCESS RIGHTS:

Contrary to the defendant assertions, due process requires that the text of a statute or regulation must provide "fair and effective notice" of the conduct proscribed. U.S. v. Cardiff, 344 U.S. 174, 177 (1952) (finding that constructive notice may not be inferred where the statute on its face did not provide "fair warning" of the conduct prohibited). Also see Reeves v. Petticx, 19 F3d 1060 (5th

Cir. 1994).

At the time of this incident, plaintiff was in the DOC's Department Disciplinary Unit (DDU) where he had extremely limited State Created Liberty Interests. The sanctions imposed upon the plaintiff were atypical due to the fact that he was deprived of evry state created liberty interest and subjected to total and complete sensory deprivation for extended periods of time. Such deprivation has been ruled unconstitutionally by the high courts of the land. (Plaintiff does not have the skill to research this issue for case law citations).

Contrary to what defendants counsel alleges, I was not afforded all the due process set forth in Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). I was not allowed to confront the reporting officer whom I requested as a witness. See plaintiff's exhibit "A" in complaint.

3. CENSORING SCHMITT'S OUTGOING MAIL, WHICH CONTAINED MATERIAL THAT ENCOURAGES OR INSTRUCTS IN CRIMINAL ACTIVITY, DID NOT VIOLATE HIS FREE SPEECH RIGHTS;

Defendants allege that they were acting with a legitimate governmental interest when censoring plaintiff's mail, and that this was clearly permissible under the standard set forth in Procunier v. Martinez, 416 U.S. 396, 412-13 (1974). A review of the disciplinary package, submitted with plaintiff's complaint, and marked as exhibit "A" shows that plaintiff was charged with three offenses, (2) VIOLATING ANY DEPARTMENTAL RULE OR ANY OTHER RULE, REGULATION, OR CONDITION OF AN INSTITUTION OR COMMUNITY BASED PROGRAM; (8) CONDUCT WHICH DISRUPTS OR INTERFERES WITH THE SECURITY OR ORDERLY RUNNING OF THE INSTITUTION: (33) ATTEMPTING TO COMMIT ANY OF THE ABOVE OFFENSES, MAKING PLANS TO COMMIT ANY OF THE ABOVE OFFENSES OR AIDING ANOTHER PERSON TO COMMIT ANY OF THE ABOVE OFFENSES SHALL BE CONSIDERED THE SAME AS THE COMMISSION OF THE OFFENSE ITSELF. After an improper disciplinary hearing in which plaintiff was abscent from, the offenses numbered 8 and 33 were dismissed as "NOT ESTABLISHED." Defendants forfeit their proclaimed governmental interest based on security issues as set forth in Procunier v. Martinez. Furthermore, defendants can not justify their actions using the Procunier standard because they show no proof of the "one or more of the substantial governmental interests of; 1) Security, 2) Order, and 3) Rehabilitation." And because they fail to meet any of these three standards they clearly violate the question whether censorship is greater than necessary or essential to the protection of the alleged governmental interest involved as noted in 416 U.S. at 413.

Defendants further allege they have the right to censor plaintiff's mail due

to Policy 7300.1A of the Federal Bureau of Prisons. In this alleged policy is
five kinds of material that the court (citation not included by defendants)
specifically noted could be censored in personal correspondence; 1) that which
might violate postal regulations, e.g., threats, blackmail, or controband; 2)
that which indicates a plot to escape; 3) that which discusses criminal activities;
4) that which indicate that the inmate is running a business while he is in
confinement; or 5) that which contains codes or other obvious attempts to
circumvent legitimate prison regulations. Id. at 414 n. 14.  Plaintiff's personal
correspondence did not violate any of these five noted kinds of material indicated
in defendants motion.

    Plaintiff's letter which contains a detailed written account of his personal
sexual experience as a twelve year old boy with an age appropriate peer does not
violate the Commonwealth's General Laws as alleged by defendants due to the fact
that the incident occured in the summer months of 1977 in the geographical location
of Yantic Connecticut. Furthermore, even if this was an actual crime, which is
neither denied or confirmed by this plaintiff, statute of limitations have long
since expired. Under Connecticut statute of 1977 such a sexual encounter as
described in the story entitled, "Rain Dance", which is the basis for this action,
did not violate any laws. It was simply as I described it to my adult homosexual
pen pal friends, a consenual coming out between two best friends, both male.

    By defination, the sexual encounter described in "Rain Dance" can not be
labeled as child pornography, nor can it be labeled as any of the numerous MGL
sex offenses defendants counsel alleges it to be.

    Defendants futher allege that the DOC mail policy, 103-CMR-481.14(1) gave
the defendants the authorization to censor plaintiff's mail when it is the opinion
of the superintendent that the mail in question represents a threat to security,
order, rehabilitation or the public safety. Plaintiff has already proved, by the
use of defendants own documents (exhibit "A" plaintiff's complaint) that the
defendants dismissed certain charges of his disciplinary report which may have
supported the defendants after-the-fact allegations of the written story being
a threat to security or other justifiable governmental interests to warrant a
censorship of plaintiff's mail.

    Defendants allege that the story entitled "Rain Dance" encourages or instructs
in the commission of criminal activity.  If this allegation had any merit at all
it would force the DOC at the Treatment Center and all other facilities to remove
a substantial portion of their library books which have plots of murder, robbery,

extortion, arson, drug deal, arms dealing, kidnapping and any and all criminal activity, especially the numerous books depicting sexual plots, whether it be rape or romance because sexually explicit material is allegedly banned at the Treatment Center.

It is questionable and mysterious that defendants counsel has such insight regarding the story entitled "Rain Dance", which is a true encounter of the plaintiff's first consenual homosexual sexual relationship, yet she fails to glean the fact that the incident occured in Yantic Connectic in the summer of 1977. Perhaps this is a lapse due to convenience for counsel, evidenced by her extensive display of the alleged sexual offenses violated by me under the General Law Statutes of the Commonwealth of Massachusetts, not the laws of Connecticut where the loving and consensual relationship lived out.

Furthermore, and just as intriguing, is the fact that from the very begining the defendants steadfastly claimed this story "Rain Dance" was consistent with other fictional stories involving children, that I simply claimed it was a real story when in fact it was the same as other graphically describes sexual escapades.

Assuming that the story is in fact a purely fictional situation (or true as plaintiff claims) as defendants have consistantly alleged until this latest attempt to have the action dismissed by new counsel C. Raye Poole, it clearly indicates in the Omnibus Appropriation Act of 1997, Sec. 121, cited as the Child Pornography Prevention Act of 1996, (C.P.P.A.) that such written material has not been found to be intrinsically related to the sexual abuse of children. This clearly trumps the defendants allegation that plaintiff's mail contained material that clear encourages or instructs in the commission of criminal activity.

In fact, the defendants counsel has plainly repeated what her clients have been guilty of doing to this plaintiff. That very simply put is "indulging her personal prejudices and opinions while purporting to apply constitutional standard. See Procunier v. Martinez, 416 U.S. at 415, 94 S.Ct at 1812. "Supreme Court has held unconstitutional the censorship of prisoner mail when prison officials censor simply by indulging their 'personal prejudices and opinions' while purporting to apply constitutional standard. Other courts have agreed that when reviewing officials merely 'apply their own personal prejudices for mail censorship' they deprive prisoners of constitutional protection. Trapnell v. Riggsby, 622 F.2d 290, 293 (7th Cir. 1980) Accord Pepperling v. Crist, 678 F.2d 787, 790 (9th Cir. 1982) (Prison officials have no legitimate governmental interest in imposing their own standards of sexual morality on the inmates.")

Defendants counsel alleges "that plaintiff's argument that he had no notice of the rule, in violation of his due process rights, is without merit, given that the rule which permits censorship of such materials is a promulgated regulation. Consequently, it is clear that the Department officials did not violate plaintiff's rights as a result of censoring the material at issue." Defendants counsel has still failed to state the specific rule and any accurate ways that plaintiff has allegedly violated such rule. Thus far the defendants counsel has indicated a vast number of MGL sex offenses that have no lawful bearing on issues that took place in a completely different geographical location/state. Unless the plaintiff is completely in error, the fact that the 103-CMR-481 Inmate Mail Policy is in fact promulgated, this fact would benefit plaintiff in that the policy carries the force of law and as such it must carry a due process standard and an expectation of protection of Free Speech and Invasion of Privacy as long as one follows the face value meaning of said policy.

4. THE RIGHT WAS NOT CLEARLY ESTABLISHED WITH REGARD TO THE CENSORSHIP OF AN INMATE'S OUTGOING MAIL WHICH CONTAINS SEXUAL BEHAVIOR THAT VIOLATES THE LAW:

Plaintiff has responded to this line of argument above. Defendants are pusuing a moot issue because the material in question violated no statute of the Commonwealth as defendants now attempt to force this Court to believe by repeating the lame and moot issue over and over.

Plaintiff must insist that per policy 103-CMR-481 authorization must be given by the commissioner or the superintendent. However, no such authorization appears in plaintiff's six part file which a complete copy is in the possession of the Worcester Superior Court Assistant District Attorney Peter Pratt and the counsel for plaintiff, Christopher P. LoConto. This lack of authorization only emphasises the plaintiff's claims of violations of his rights.

5. SCHMITT'S CERTIORARI CLAIM IS MOOT AND IS BARRED BY THE STATUTE OF LIMITATIONS:

Plaintiff's case is filed pursuant to 42 U.S.C. §1983 due to violations of his constitutional rights, and other rights. Plaintiff will not justify these allegations with any further response.

6. ANY CLAIMS AGAINST NAMED DEFENDANT MICHAEL MALONEY MUST BE DISMISSED BECAUSE HE WAS NEVER SERVED.

As stated in plaintiff's opposition to defendants motion for reconsideration Schmitt v. Mulvey USDC Civil Docket No. 04-10717-RWZ, this defendant was served

at his last known address, the Department of Correction, and said service was
refused by his former employer. Plaintiff served former employee Peter Allen at
his last known address and defendants accepted this service. PLaintiff must
now look upon this Honorable Court for recourse to this matter. It is a clear
matter of the DOC blatantly hindering the service of a defendant. The DOC even
refused to supply plaintiff with an address so the defendant could be served.
This motion is filed in this action and perhaps the related action, 04-10717-RWZ.

7. SCHMITT HAS NO §1983 CLAIM FOR DAMAGES AGAINST THE DEPARTMENT OR THE DEPARTMENT OFFICIALS IN THEIR OFFICIAL CAPACITIES:

The plaintiff states that officials who act without legal authority, that is, without statutory pervisions or do so to an immediate threat to the health and safety of others, are acting in their individual capacities as officials. The defendants, each as individuals, acted to deprive this plaintiff of his Constitutional Rights, Privileges, and Immunities by use of official titles/powers. It is the obligation/duty of State Officials to have a reasonable working knowledge/understanding of the State and Federal Constitution as well as the rules and regulations of the place they are employeed. In this instant case, the 103-CMR-481 Inmate Mail Policy. Therefore , the defendants used their official capacity to impose punitive sanctions and censorship of plaintiff's First Amendment Rights. Even though the plaintiff was incarcerated at the time of the unauthorized censorship of his mail, or seizure of his mail he duly sealed and addressed to a private citizen, this may also violate the Fourth Amendment's prohibition of unreasonable search and seizure. This argument arises out of the plain and simple language of the Fourth Amendment; "The Right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particulary describing the place to be searched, and the person or things to be seized," U.S. Constitution Fourth Amendment. In more than one way the Fourth Amendment has simularities to the DOC Mail Policy. Clearly, by this some Federal questions arise: 1) Does the First Amendment prohibit an incarcerated person from writing/creating/expressing pornographic "storis," and mailing them to another citizen; and 2), Does the Fourth Amendment's provisions protecting plaintiff's property extend to him while he is incarcerated, and does his personal pornographic writings qualify as such property. The plaintiff believes that because the defendants acted without direct statutory/regulatory authority prohibiting his actions. the defendants deliberately violated his Constitutional Rights. And, without the legal authority required to obrogate his free speech and

personal property, the defendants acted as individuals, in violation of the Federal Constitution.

For additional opposition please see plaintiff's "Opposition to Defendants Motion to Dismiss or for Summary Judgment" dated March 18,2005 pages 6 and 7.

8. COMMISSIONER MALONEY AND WILLIAM GROSSI ARE ENTITLED TO DISMISSAL OF THE CLAIMS UNDER §1983 IN THE ABSENCE OF SUPERVISORY LIABILITY:

There is an abundant amount of documented evidence within the records that clearly show the fact that Plaintiff reported the violations of his rights to both these individuals and their respected offices. When faced with such material and to make a deliberate choice to disregard such facts and warnings these defendants can be held liable for their actions, lack of supervisory liability. The forementioned fact satisfies the "afirmative link" pointed out by defendants counsel.

9. SCHMITT'S CONSTITUTIONAL CLAIMS REGARDING THE CENSORSHIP OF HIS OUTGOING MAIL ARE MOOT:

The fact that plaintiff is nolonger serving a prison sentence has absolutely no bearing on the fact that pursuant to the 42 U.S.C. 1983 action he filed against the defendants for monetary and other damages for the blatant violations of his rights by the defendants unlawfull actions.

The fact that the plaintiff is presently facing a MGL c. 123A Civil Commitment Trial has no bearing on the instant action, except perhaps to highlight the fact that the defendants are still violating his personal incoming and outgoing mail from and to private citizens of the U.S..

Contrary to the defendants deliberate attempt to lie to this Court by claiming plaintiff, in any way whatsoever, concedes that he is not permitted to send out or receive descriptive materials of a sexual nature while housed at the Treatment Center, allegedly stated by plaintiff in Plaintiff's Opposition to Motion to Dismiss at 1. Plaintiff merely stated, "Further, the plaintiff has not, and does not sek to be allowed to send or receive material of a sexual nature from the institution he is presently being detained." This statement is a direct response to the defendants memorandum of law in support of motion to dismiss or, in the alternative, for summary judgment I. Introduction; "Schmitt's complaint also appears to challenge the DEpartment's authority to prohibit him from possessing or mailing sexually explicit material involving young men or children while housed at the Treatment Center."

In no way do I now or then concede that I am not allowed to exercise my Constitutional Rights to Free Speech and Free Expression. Nor do I concede that there are any rules or regulations in place at the Nemansket Correctional Facility that would lawfully prevent me from exercising these guaranteed rights.

## CONCLUSION

For the foregoing reasons, the defendants supplement to their motion to dismiss, or in the alternative, for summary judgemnt must be denied, and this action moved to trial.

dated: January 26, 2006

Respectfully Submitted,

Joseph P. Schmitt, pro se
Nemansket Correctional Facility
30 Administration Road
Bridgewater, Massachusetts
02324-3230

### Certificate of Service

I, Joseph P. Schmitt, pro se plaintiff of the above captioned action, hereby certify that a true copy of the above opposition was served upon C. Raye Poole, counsel for the defendants, via institutional mail on January 27, 2006

Joseph P. Schmitt, pro se