UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10451-RWZ
CIVIL ACTION NO. 04-10717-RWZ

JOSEPH SCHMITT,
      Schmitt,
      v.
JEFFREY SMITH, et al.,
Defendants

&

JOSEPH SCHMITT,
      Schmitt,
      v.
PATRICK MULVEY, et al.,
Defendants.

## DEFENDANTS' OPPOSITION TO SCHMITT'S MOTION FOR COURT ORDER AND MOTION FOR SANCTIONS

      Defendants in the above-captioned matters hereby oppose plaintiff, Joseph Schmitt's

("Schmitt"), motion for court order (04-10451 Doc. No. 72) and move for sanctions for the

reasons that follow.

      Schmitt seeks the return of the two letters/stories ("stories") that were the subject of the

litigation in the instant cases.  He further moves for expungement of the discipline which he

received as a result of attempting to mail out the stories, an order that the Department provide a

list of anyone who received a copy of the disciplinary reports and stories, and to order the

Worcester Superior Court to expunge the stories from evidence being used against him in the civil

commitment petition.

## I.     THE STORIES WILL NOT BE RETURNED TO SCHMITT BECAUSE THEY CONTINUE TO BE HELD AS EVIDENCE PURSUANT TO THE

**DEPARTMENT'S SEARCH POLICY AND BECAUSE SEXUALLY EXPLICIT MATERIALS ARE PROHIBITED AT THE MASSACHUSETTS TREATMENT CENTER.**

**A.     The Stories Continue To Be Held As Evidence Pursuant To The Department's Search Policy.**

The stories continue to be held as evidence pursuant to the Department's Search Policy, which states that "[f]inal disposition of all evidence shall be approved in writing by the director of security.  Final disposition of evidence relating solely to a disciplinary or civil matter and not involving any possible criminal prosecution shall be approved in writing by the department's general counsel."  103 DOC 506.11.  Accordingly, until such time as approval of the disposition of the evidence is made in writing by the Director of Security and the General Counsel, the stories will be held as evidence by the Department.  Given that Schmitt has filed a notice of appeal in these cases, no determination would even be made regarding the disposition of said evidence until the resolution of any appeal.  Furthermore, there is no requirement under the Search Policy that a determination be made within a specified time.  See 103 DOC 506.11.  Notwithstanding this, even if the stories were not being held pursuant 103 DOC 506.11, Schmitt would not be entitled to the return of these stories, because such materials, which involve sexual acts with children, are prohibited at the Massachusetts Treatment Center ("Treatment Center"), as they are contrary to the treatment of sex offenders, as set forth below.

**B.     The Stories Are Prohibited At The Treatment Center.**

Schmitt, who is temporarily committed to the Treatment Center pending the disposition of a petition to commit him as a sexually dangerous person, is prohibited from possessing such materials at the Treatment Center.  The disciplinary regulations that apply to Treatment Center

2

residents--which have previously been approved by this Court and the First Circuit Court of

Appeals--forbid the possession of sexually explicit materials whether in written or pictorial form.

A review of the Treatment Center's history is helpful to this analysis.

> **1.      The History of the Treatment Center and the Federal Consent Decree
> Litigation.**

The Treatment Center was previously under dual management.  General Laws c. 123A, §

2 mandated that the Department of Mental Health ("DMH") had responsibility for the care,

treatment, and rehabilitation of Sexually Dangerous Persons ("SDP's"), with custodial personnel

provided by the Department.  St. 1959, c. 615, as appearing in G.L. c. 123A, § 2.  The United

States District Court for the District of Massachusetts previously entered consent decrees

governing certain aspects of the operation of the Treatment Center that incorporated this dual

management scheme.  See King v. Greenblatt ("King I"), 52 F.3d 1, 2-3 (1st Cir.), cert. denied,

516 U.S. 863 (1995).  Among other things, the consent decrees mandated that Treatment Center

residents "have the least restrictive conditions necessary to achieve the purpose of commitment."

Id.;  see also King v. Greenblatt ("King II"), 127 F.3d 190, 192 (1st Cir. 1997); King v.

Greenblatt, 149 F.3d 9 (1st Cir. 1998) ("King III"); King v. Greenblatt, 53 F. Supp.2d 117, 118-

20 (D. Mass. 1999) (detailing changes in conditions at Treatment Center from 1972 to 1992).

"General Laws c. 123A is a comprehensive legislative program designed to identify and treat

sexually dangerous persons.  The statute was enacted 'with the dual aims of protecting the public

against future antisocial behavior by the offender, and of doing all that can be done to rehabilitate

him.'"  Commonwealth v. Barboza, 387 Mass. 105, 111 (1981), cert. denied, 459 U.S. 1020

(1982) (citations omitted).

On January 14, 1994, the Legislature enacted St. 1993, c. 489, § 2, which amended G.L. c. 123A, § 2 by placing sole authority and responsibility over the Treatment Center with the Department.  St. 1993, c. 489, § 2, as appearing in G.L. c. 123A, § 2.  See King III, 149 F.3d at 11-12; King, 53 F. Supp.2d at 121.

As a result of this legislative change, in 1994 the Court (Mazzone, J.), began overseeing what ultimately became the final phase of the federal consent decree litigation.  In 1994, the Court appointed the law firm of Hale and Dorr to represent forty-nine SDP's who called themselves the "Class of 48 + 1" and alleged a number of violations of their state and federal constitutional rights.  King, 53 F. Supp.2d at 121.

The Court reopened another consent decree case concerning the Treatment Center, Harold G. Williams v. Michael Lesiak, U.S.D.C. C.A. No. 72-571-ADM, and consolidated it with Mitchell G. King v. Milton Greenblatt, M.D., U.S.D.C. C.A. No. 72-788-ADM, the case involving the Class of 48 + 1 (together 'the federal consent decree litigation').  King, 53 F. Supp.2d at 121.

Following the enactment of St. 1993, c. 489, § 2, the Commonwealth moved to vacate or in the alternative to modify the consent decrees by substituting the Department for DMH as the agency designated to have primary responsibility and control for the facility.  King I, 52 F.3d at 3. The Department submitted to the Court an extensive Management Plan for the administration of the Treatment Center.  King II, 127 F.3d at 193.  The Management Plan encompassed in detail almost every aspect of life at the Treatment Center including policies, regulations, and rules governing staffing, clinical treatment, educational and vocational treatment, a community access

program, behavior management, and resident management operations.  Id.; King III, 149 F.3d at

15.  The Court permitted the Department to implement its plan and modified the consent decrees

to place responsibility for and control of the Treatment Center in the Department.  King II, 127

F.3d at 194.

The Court, however, did not vacate the consent decrees.  King III, 149 F.3d at 16.

Instead, the Court elected to exercise close judicial oversight of the Department's compliance

with the consent decrees.  Id. at 122-23; King, 53 F. Supp.2d at 122-23.  Additionally, the Court

ordered the Department to submit an amended plan addressing issues raised by the parties.  The

Amended Plan was filed on November 29, 1996.  King, 53 F. Supp.2d at 122.

From 1994 to June, 1999, the Court approved, oversaw, and monitored the Department's

assumption of sole control over the Treatment Center, including the Department's expansion of

sex offender treatment services at the Treatment Center to non-civilly committed state prison

inmates ("SPI's").  See, e.g., King, 53 F. Supp.2d at 121-23.  Throughout that period, the SDP's

continued to assert that the Department's policies and procedures and its introduction of the SPI's

into the facility "essentially turned the Treatment Center into a prison and fundamentally altered

the therapeutic community."  King III, 149 F.3d at 16.  They also complained that the

Department's new rules and regulations and the additional SPI population impaired or affected

treatment so as to render it ineffective and in violation of G.L. c. 123A and the consent decrees.

King, 53 F. Supp.2d at 123, 135.

This final phase of the consent decree litigation culminated in an evidentiary hearing before

the Court in March, 1999.  King, 53 F. Supp.2d at 124.  At the hearing, SDP's reiterated their

numerous complaints about the Department's operation of the Treatment Center.  See King, 53 F.

Supp.2d at 129-31, 134-35.  After the hearing, the Court terminated the consent decrees.  King,

53 F. Supp.2d at 136, 139.  In doing so, the Court determined that the SDP's complaints about

the Department's policies, procedures, rules, and regulations, as well as their complaints about the

presence of the SPI's in the Treatment Center taken as a whole did not render treatment

ineffective, did not violate G.L. c. 123A, did not violate the consent decrees, and, by implication,

did not violate any state or federal rights.  King, 53 F. Supp.2d at 135, 137.  See King III, 149

F.3d at 19.

        This Court terminated the consent decrees in June, 1999.  See King, 53 F. Supp.2d at 117.

In September, 1999, the Legislature amended G.L. c. 123A and once again provided for the civil

commitment of sexually dangerous persons.  See G.L. c. 123A, §§ 12-14 (detailing new

commitment procedures); see also Commonwealth v. Bruno, 432 Mass. 489, 495-97 (2000)

(detailing new commitment procedures).  The Legislature also required the Department to submit

a plan for the administration and management of the Treatment Center to the clerks of the House

of Representatives and the Senate.  See G.L. c. 123A, § 16.  As the Supreme Judicial Court

noted, the Treatment Center's superintendent "has promulgated rules and regulations regarding

persons temporarily committed consistent with the management plan for the facility as a whole

that comports with constitutional requirements as determined by the United State District Court."

Bruno, 432 Mass. at 514 (citing King v. Greenblatt, 53 F. Supp.2d 117, 134-37 (D. Mass. 1999)).

In particular, the regulations provide that persons temporarily committed shall be managed in a

manner similar to management for the facility as a whole.  Id. (holding that there was no showing

that Commissioner of Correction abused his discretion in holding those temporarily committed in accordance with these rules and regulations or that the manner and conditions under which those temporarily committed are held is unconstitutional).  Thus, that Schmitt is currently a civil detainee pending the results of his civil commitment hearing does not exempt him from the rules and regulations at the Treatment Center.

**2.    Approval of the Discipline System for SDP's.**

In the course of the consent decree litigation, the federal court reviewed the establishment of a disciplinary system for SDP's, codified at 103 CMR 431, <u>Observation of Behavior Reports</u> ("OBR Regulations").  <u>See</u> <u>King</u>, 53 F. Supp.2d at 127.  The then clinical director of the Treatment Center drafted the disciplinary policy which included a list of defined offenses and corresponding sanctions.  <u>Id.</u>

Both this Court and the First Circuit Court of Appeals approved the OBR Regulations. <u>Id</u>. at 128; <u>King III</u>, 149 F.3d at 18.  This Court found that the OBR Regulations "give[] adequate and fair warning of punishable offenses and their corresponding sanctions, and provide[] for notice and a hearing, where the resident has an opportunity to be heard."  <u>King</u>, 53 F. Supp.2d at 128 (citation omitted).  In particular, the First Circuit concluded that "the disciplinary system is responsive to both the 'treatment' need of residents to learn accountability for their actions and the administrative and security concerns of the institution.  <u>King III</u>, 149 F.3d at 18.  Importantly, the First Circuit "found no constitutional defects in the disciplinary procedures" set forth in the Amended Management Plan.  <u>King</u>, 53 F. Supp.2d at 128.

The OBR Regulations preclude residents from "[p]ossessing unauthorized sexually explicit

or offensive-related printed material or objects."  103 CMR 431.11, offense C-13.  The term

"sexually explicit" is not defined in the OBR Regulations.  Contrast 103 CMR 481.06, Inmate

Mail (defining "sexually explicit" as "[a] pictorial depiction of actual or simulated sexual acts

including sexual intercourse, anal or oral sex, or masturbation or material which promotes itself

based upon such depictions on a routine or regular basis or in individual one-time issues.").

Furthermore, this prohibition is broader than that contained in 103 CMR 481.06.

   The reason for the broader definition applicable to the Treatment Center is obvious.  The

Treatment Center is designed to treat sex offenders.  General Laws c. 123A, § 2 vests the

Commissioner of Correction with sole responsibility for the Treatment Center's operation.  The

statute requires the Commissioner to maintain a treatment center for "the care, custody, treatment

and rehabilitation" of sexually dangerous persons.  G.L. c. 123A, § 2.

   There can be no doubt that states have a legitimate and compelling interest in

rehabilitating sex offenders.  "Sex offenders are a serious threat in this Nation."  McKune v. Lile,

536 U.S. 24, 32 (2002).  As the Supreme Court recently noted, when sex offenders reenter

society, "they are much more likely than any other type of offender to be rearrested for a new

rape or sexual assault."  Id. at 33.  "States thus have a vital interest in rehabilitating sex

offenders."  Id.  Indeed, in a recent Massachusetts Superior Court decision, the court determined

that the Treatment Center's prohibition of "possession of 'offensive pictures or literature' is

reasonably related to legitimate penological interests."  Morrissey v. Dennehy, Mem. of Decision

and Order on Defs.' Mot. for J. on the Pleadings, Plymouth C.A. No. 05-0081B (May 4, 2006)

(Rufo, J.) (attached hereto as Ex. A).

There can also be no doubt that the possession of unauthorized sexually graphic material (whether in written or pictorial form) inside the Treatment Center is harmful to rehabilitation goals and treatment and security needs of this unique facility.  As noted above, the former clinical director of the sex offender treatment program developed the OBR Regulations, which prohibit the possession of such materials.  It seems clear beyond the necessity for demonstration that sexually graphic materials may be used as a form of currency, incite anger and violence among the population and continue to feed the sexual deviance of those who come into contact with such material, all of which are contrary to the rehabilitation goals and treatment and security needs of the Treatment Center. (Murphy Aff., attached hereto as Ex. B.)  Accordingly, Schmitt is prohibited from possessing the stories that were the subject of the litigation while he is housed at the Treatment Center.

## II.    SCHMITT IS NOT ENTITLED TO HAVE THE DISCIPLINE EXPUNGED FROM HIS PRISON DISCIPLINARY RECORD.

With regard to the expungement of the discipline from Schmitt's record, that issue was not before the jury, nor did Schmitt make any such request.  Consequently, he may not raise the issue now, given that the cases are now closed, following a trial by jury.  Furthermore, as discussed in defendants' supplement to their motion for summary judgment and motion for reconsideration, the statute of limitations on the certiorari claims expired prior to the filing of his complaints, and, thus, he is barred from raising any claims with regard to the expungement of the disciplinary records.  Moreover, the request is also inappropriate because the issue is moot, as he is no longer an incarcerated inmate, but, rather, a civil detainee.

9

## III.    SCHMITT IS NOT ENTITLED TO ANY FURTHER DISCOVERY IN THIS MATTER.

With regard to his request that the Department provide a list of anyone who received a copy of the disciplinary reports/stories, this case is closed, and, thus, Schmitt is not entitled to any discovery on this or any other matter.  Furthermore, the disciplinary reports and stories were attached as exhibits to defendants' motions, and, thus, are a public record available to anyone who wishes to request them through the Court.

## IV.    SCHMITT SHOULD BE MONETARILY SANCTIONED FOR HIS FAILURE TO COMPLY WITH THIS COURT'S ORDERS TO CEASE FILING DUPLICATIVE AND FRIVOLOUS MOTIONS AND ALL OF HIS FUTURE MOTIONS SHOULD BE DISMISSED SUA SPONTE WITH FURTHER SANCTIONS IMPOSED.

With regard to Schmitt's request that this Court have the stories removed from the Worcester Superior Court civil commitment proceeding, on no less than three prior occasions (04-10717 Doc. Nos. 47, 53, 64, orally at pre-trial conference), Schmitt has made the same request, and each time this Court has denied his request.  Given Schmitt's failure to comply with this Court's March 30, 2005 Order, in which "Schmitt is ordered to cease filing the same motion more than once," and its March 1, 2006 Order, in which "Schmitt is warned that any subsequent duplicative motions will result in the dismissal of the action," defendants move that Schmitt be sanctioned no less than $100.00, thereby reducing the $302.00 judgment to $202.00, for defying this Court's Orders and continuing to waste the Court's and the Commonwealth's time and resources in responding to this duplicative and frivolous motion.  The Defendants further move that all future motions which he files be denied sua sponte, with further monetary sanctions

imposed for his relentless filing of frivolous and meritless motions, which continue despite that these cases are closed.

## **CONCLUSION**

For the foregoing reasons, Schmitt's post-trial motion for court order should be denied, and he should be monetarily sanctioned for defying the Court's Orders and continuing to file the same frivolous motions.  In addition, all future motions which he files in these closed matters should be denied <u>sua</u> <u>sponte</u>, with further monetary sanctions imposed against Schmitt as the Court sees fit for his relentless filing of frivolous and meritless motions.

Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

DATED: May 10, 2006            C. Raye Poole

/s/ C. Raye Poole

B.B.O. # 632719
Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, MA 02110
(617) 727-3300 ext. 147

<u>Certificate of Service</u>

I, C. Raye Poole, counsel for the defendants, hereby certify that on this 10th day of May 2006, I served a copy of the above motion by first class mail, postage prepaid, on the Schmitt, Joseph Schmitt, at his last known address, Massachusetts Treatment Center, 30 Administration Road, Bridgewater, Massachusetts  02324.

/s/ C. Raye Poole
C. Raye Poole