UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10451-RWZ
CIVIL ACTION NO. 04-10717-RWZ

JOSEPH SCHMITT,
        Schmitt,
        v.
JEFFREY SMITH, et al.,
Defendants

&

JOSEPH SCHMITT,
        Schmitt,
        v.
PATRICK MULVEY, et al.,
Defendants.

## DEPARTMENT OFFICIALS' MOTION TO VACATE SCHMITT'S INDIGENCY STATUS

        The defendants-appellees ("Department Officials") hereby move this Court to

vacate the plaintiff-appellant, Joseph Schmitt's ("Schmitt") indigency status so that he may

no longer maintain his indigency status in his three appeals of the above matter, 06-1778

& 1789 (consolidated cases) and 06-2050, pursuant to the Appeals Court's ruling dated

October 19, 2006 and FRAP 24(a)(3)(A).

        The Department Officials assert that Schmitt's financial status warrants that he

pay, in full or in part, the requisite filing fee of $455.00 in either or both 06-1778 & 1789

and 06-2050.  For the reasons set forth below, Schmitt should not be permitted to

continue to proceed in forma pauperis.

2

# INTRODUCTION

According to the docket sheet in Schmitt's Appeal Nos. 06-1778 & 1789,[1] on or about June 20, 2006 Schmitt filed a motion to proceed in forma pauperis, in which he stated, inter alia, that he "has had absolutely no income for many years until just recently," and that he cannot afford to pay the filing fee because at the present time he has "less than or approximately $150-200 and even this he has previous plans to use to replace stolen property from him and for some small comforts he is allowed in this facility." It is clear that Schmitt has access to funds, but instead of using them to pay the filing fees in his numerous lawsuits, including the instant appeals, he chooses to squander them on numerous magazine subscriptions and frequent canteen (snack) purchases. As described in detail below, Schmitt could easily have saved enough money to pay the filing fee in the appeals he filed in the instant matter and his other lawsuits merely by temporarily foregoing his weekly snack purchases at the canteen and by reading books and magazines available to him free of charge in the Massachusetts Treatment Center ("MTC") library.

# ARGUMENT

Schmitt's in forma pauperis status should be revoked because he can no longer meet the required criteria for such status.

28 U.S.C. § 1915 provides that a petition to proceed in forma pauperis is granted or denied at the discretion of the court. However, the court's discretion is limited to determinations of poverty and objective good faith. Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 46 (1915). Good faith is demonstrated when an applicant seeks appellate review of any issue that is not frivolous. Coppedge v. United States, 369 U.S. 438,

---

[1] Schmitt failed to serve this on counsel for the Department Officials.

3

> 445 (1962). Thus, a determination as to whether the [appellant's] application to proceed in forma pauperis on appeal should be granted turns on two factors: (1) a showing by affidavit that he is unable to pay the filing fees, see Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948), and (2) a showing that the proposed proceedings are not frivolous or malicious, see 28 U.S.C. § 1915(e).

Heghmann v. Indorf and Hafiani, 32 B.R. 415, 420 (1st Cir. 2005.)

Although Schmitt, as a civil commitment inmate, is not subject to the Prison Litigation Reform Act ("PLRA"), he is, nevertheless, under the custody and care of the Massachusetts Department of Correction ("Department"). Thus, in determining whether he is unable to afford the filing fees, this Court should consider that his necessities are provided to him by the Department in the same manner as if he were incarcerated in prison, serving time for criminal convictions.

I.     **SCHMITT'S INMATE TRANSACTION REPORT MAKES CLEAR THAT HE HAD FUNDS AVAILABLE TO PAY THE FILING FEE IN HIS APPEAL/S OF THIS AND OTHER CASES BUT CHOSE INSTEAD TO SPEND THOSE FUNDS ON DISCRETIONARY ITEMS.**

Schmitt's twelve-page Inmate Transaction Report, which covers the period of January 1, 2005 through August 29, 2006, makes clear that Schmitt has a practice of spending the money in his account so as to appear indigent.[2] Schmitt has received more than $800.00 in funds since April 2006. In addition, his Inmate Transaction Report reveals that Schmitt spends approximately $50 on canteen items on a regular weekly basis. Schmitt should not be permitted to claim indigency while spending his money on discretionary items such as snacks from the canteen and magazine subscriptions, expecting

---

[2]     Schmitt has been sanctioned in the past for committing a fraud upon the court with respect to his

4

the public to assume the costs of his frequent litigation.

In his motion to proceed in forma pauperis, Schmitt claims that he currently has only $150-200 in his account that he had previous plans to use to replace stolen property, along with a debt of $300 to his friend which was incurred "well prior to any appeal issues to be brought before this court."  His Inmate Transaction Report reveals that he received **$500.00** from Derek Kolb ("Kolb"), a former co-plaintiff in U.S.D.C. 06-cv-10569, on April 24, 2006.  (Smith Aff., attached hereto as Ex. 2, Inmate Transaction Rpt. at 8.).

In a subsequent letter to the clerk in case number 06-1778 dated June 20, 2006, which he also failed to serve on counsel of record for the Department Officials, he states: "As I clearly indicate in my motion to proceed in forma pauperis dated May 17, 2006 I am in debt for $300.00 (this should be $500.00) to Derek Kolb as I borrowed funds against the damages I was awarded in my U.S.D.C. cases."  Schmitt now apparently claims that the $500.00 was a "loan" in anticipation of the judgment he was to receive in U.S.D.C. 04-cv-10451 & 10717, in which he was awarded $302.00 on April 5, 2006.  Schmitt was fully aware of the exact amount of the judgment nineteen days prior to receiving the $500 from Kolb, belying the veracity of this statement.  Even assuming, arguendo, that he "borrowed" funds from Kolb while awaiting the judgment to be credited to his inmate account, Schmitt's Inmate Transaction Report indicates that he sent out $25.00 to Kolb on May 19, 2006 and $135.00 on June 28, 2006, for a total of $160.00.  Rather than repay Kolb the balance of what he claims that he owed him, between April 27, 2006 and June 29, 2006 Schmitt continued to spend money on snacks and sundries at the canteen totaling

finances.  (See Order dated Nov. 29, 1999, attached hereto as Ex. 1.)

5

$511.37.  (See Ex. 2, Inmate Transaction Rpt.)

Schmitt's Inmate Transaction Report reveals that in addition to the $500.00 which he received from Kolb, on May 26, 2006 Schmitt's account was credited with the **$302.00** judgment from the Commonwealth of Massachusetts and **$50.00** from Loconto Burke Madaio.  (Ex. 2, Inmate Transaction Rpt. at 10.)

It is clear that instead of using his discretionary funds to subsidize his numerous lawsuits, Schmitt, spends his money on canteen items on a regular basis.  Schmitt's Inmate Transaction Report reveals that between January 1, 2005 and August 29, 2006 he spent the following amounts on canteen items:

| | |
|---|---|
| January 6, 2005: | **$77.54** |
| January 13, 2005: | **$50.40** |
| January 20, 2005: | **$59.73** |
| February 3, 2005: | **$56.90** |
| February 10, 2005: | **$59.99** |
| February 17, 2005: | **$58.65** |
| February 24, 2005: | **$56.97** |
| March 3, 2005: | **$59.07** |
| March 10. 2005: | **$59.56** |
| March 17, 2005: | **$59.61** |
| March 24, 2005: | **$59.94** |
| March 31, 2005: | **$59.87** |
| April 7, 2005: | **$59.16** |
| April 14, 2005: | **$59.94** |
| April 21, 2005: | **$56.73** |
| May 5, 2005: | **$53.45** |
| May 12, 2005: | **$59.70** |
| May 19, 2005: | **$51.71** |
| May 26, 2005: | **$55.19** |
| June 2, 2005: | **$58.32** |
| June 9, 2005: | **$59.85** |
| June 16, 2005: | **$55.02** |
| June 23, 2005: | **$59.85** |
| June 30, 2005: | **$59.15** |

6

| July 7, 2005: | **$50.01** |
|---|---|
| July 14, 2005: | **$59.80** |
| July 21, 2005: | **$56.75** |
| July 28, 2005: | **$59.80** |
| August 4, 2005, | **$16.78** |
| August 18, 2005: | **$17.40** |
| August 25, 2005: | **$29.34** |
| September 1, 2005: | **$32.44** |
| September 8, 2005: | **$29.21** |
| September 15, 2005: | **$20.61** |
| September 22, 2005: | **$21.21** |
| September 29, 2005: | **$57.36** |
| October 6, 2005: | **$36.68** |
| January 12, 2006: | **$50.12** |
| January 26, 2006: | **$33.54** |
| April 27, 2006: | **$56.95** |
| May 4, 2006: | **$51.32** |
| May 11, 2006: | **$59.72** |
| May 18, 2006: | **$58.93** |
| May 25, 2006: | **$59.64** |
| June 1, 2006: | **$18.38** |
| June 8, 2006: | **$59.38** |
| June 15, 2006: | **$66.73** |
| June 22, 2006: | **$12.15** |
| June 29, 2006: | **$68.17** |

(Ex. 2, Inmate Transaction Rpt.)

As revealed by his Inmate Transaction Report, during some months in 2005 and 2006, Schmitt was spending approximately $50.00 per week, an amount that exceeds what many hard-working members of the public spend per week on their entire grocery bill, for canteen items. Surely, if Schmitt can afford to spend $200.00 per month for canteen items, he can afford to pay the filing fees for his many ongoing lawsuits.[3] Furthermore, although Schmitt may claim that he spends his canteen money on

_____

[3] Schmitt has filed 13 cases in federal court alone between January 1, 2005 and August 31, 2006. The Department's records indicate that since 1999 he has filed 40 cases against Department officials. (See Fed.

"necessary" items or a few "small comforts," the records attached to Exhibit 4 belie such a claim, and demonstrate exactly what Schmitt has spent his canteen money on since April 2006.

Although Schmitt purchases the occasional stamp, box of envelopes and various cosmetic items, the majority of his canteen purchases are for snack foods, including: **ramen noodles, cheese, pepperoni, peppers, coffee, hot chocolate, tuna, peanut butter, pretzels, peanut brittle, nacho chips, pasta, salami, corn chips and salsa**. (Lynch Aff., attached hereto as Ex. 4, Schmitt's Canteen Orders.)  Indeed, a review of Schmitt's canteen purchases makes clear that he is stockpiling snack food items, thereby draining his inmate account, at the same time that he is filing for in forma pauperis status in this Court and in other courts as well.  One need look no further than his purchase of **290 packages of ramen noodles** between April 27, 2006, and June 29, 2006 to quell any doubts as to whether Schmitt has chosen to indulge in and stockpile discretionary items while at the same time expecting the public to assume the costs of his litigation.  (See Ex. 4, Schmitt's Canteen Orders.)

In addition, rather than avail himself of the books, newspapers, and magazines which he may read free of charge in the MTC library,[4] Schmitt instead has chosen to spend his funds on magazines and other publications, including:

**National Geographic**
January 4, 2005:        $24.00

Civil Case List and the Dept's list of Schmitt cases, attached hereto as Ex. 3.)
[4]        The following is a partial list of the magazines available to Schmitt at the MTC library:  Smithsonian, Discover, Ebony, Entertainment Weekly, Martha Stewart Living, Boating, Sporting News, Road & Track, Popular Science, and National Geographic.  Notably, one of the magazines which he spent $93.80 on, National Geographic, was available to him free of charge in the library.

8

February 1, 2005:      $34.00
May 11, 2005:          $17.90
August 19, 2005:       $17.90

**Hot Rod**
June 10, 2005:         $12.00

**TV Guide**
September 6, 2005:     $26.34

**Mystery Guild**
January 28, 2005:      $65.40
February 18, 2005:     $22.96
April 29, 2005:        $30.98
May 11, 2005:          $11.50
June 3, 2005:          $8.60

**Motorboating Magazine**
February 14, 2005:     $13.97

**Outdoor Life**
April 20, 2005:        $11.97

**Traveler**
April 20, 2005:        $12.00

**Cargo**
April 20, 2005:        $9.97

**Flying Buffalo**[5]
April 20, 2005:        $25.00

**Penny Marketing**[6]
February 25, 2005:     $9.95
August 19, 2005:       $23.45

**US Playing Card Company**
January 28, 2005:      $22.50

---

[5]     Flying Buffalo is a game company specializing in play-by-mail games and also publishes role-playing game books.

[6]     Penny Marketing is a variety puzzle and word game magazine.

(Ex. 2.)

Accordingly, Schmitt is clearly able to pay the requisite filing fee without depriving himself of the necessities of life, but has chosen not to do so.  As a civil commitment inmate at the MTC, Schmitt receives without cost his housing, three meals per day, clothing, medical care and dental care, in the same manner as if he were an inmate serving a criminal sentence.  It is Schmitt's lack of significant expenses that compels the conclusion that a fee provision "will not result in any hardship above that faced by the average citizen considering whether to bring a lawsuit." Hampton v. Hobbs, 106 F.3d 1281, 1284-85 (6th Cir. 1997) (rejecting constitutional challenges to the federal filing fee requirement imposed on prisoners by the PLRA and noting that prisoners are provided the necessities of life, housing, food, clothing and medical care, at state expense). See Tucker v. Branker, 142 F.3d 1294, 1298 (D.C. Cir. 1998) (rejecting constitutional challenges to the federal filing fee requirement imposed on prisoners by the PLRA and based on prisoner's claim that paying fee would leave him with only $16 per month to spend for discretionary purposes); Prows v. Kastner, 842 F.2d 138 (5th Cir. 1988) (requiring inmate with a monthly income of $185.00 to pay $120.00 and an inmate with a monthly income of $95.00 to pay $60.00 before they could proceed with their two lawsuits).

Where Schmitt has the ability to pay the filing fee himself or summon up the money through outside means, this Court must require that he pay the filing fee just as any other member of the public would be forced to do in filing suit.  Schmitt cannot choose to spend his money any way he pleases, i.e., on magazines and snacks from the canteen,

10

hardly necessities of life, and then expect the public to assume the costs of his frequent,
repetitive, and frivolous litigation.

## II.   SCHMITT HAS FAILED TO SHOW THAT HIS CLAIM IS NEITHER FRIVOLOUS NOR MALICIOUS.

Given that Schmitt cannot make the requisite showing of poverty, his in forma
pauperis status should be vacated.  Even assuming, arguendo, that Schmitt has met the
requisite showing of poverty, which he has not, his in forma pauperis status should
nevertheless be vacated because he is unable to show that his appeal is neither frivolous
nor malicious.  In this Circuit, if the appellant has met the requisite showing of poverty,
the analysis will then

> turn to an examination of the merits of the appeal to ensure that judicial
> and public resources are not expended needlessly on an appeal which has
> no basis in law or fact. … Dismissal of an in forma pauperis complaint is
> appropriate when the claim is based on indisputably meritless legal theory
> or factual allegations are clearly baseless.

Heghmann, 324 B.R. at 420 (inner citations and quotations omitted).

Schmitt's motion to proceed in forma pauperis is devoid of any explanation as to
the reason for his appealing a judgment in which he was the prevailing party, much less a
showing of non-frivolous one.  (See Appellant's Mot. to Proceed In Forma Pauperis.)
Indeed, that Schmitt himself is unaware of the reasons why he filed this appeal makes clear
that the instant appeal is either frivolous, malicious, or both.

On or about August 30, 2006 Schmitt filed a motion for the Appeals Court to
order the clerk to provide him with a copy of the official records.  In that motion at

11

paragraph 2, Schmitt states: "Appellant is unaware of the exact matters that are actually

under appeal before this Court." To that motion he attached a letter that he had sent to

the clerk, in which he states: "However, I have no clue as to what issue is being

represented in the appeal court cases listed above. Please inform me of the exact motion,

action, etc. that is being appealed in the above cases." Accordingly, it is clear that Schmitt

cannot show that the proposed proceedings are not frivolous or malicious, given that he

was the prevailing party, and given that he does not even know the bases of his own

appeals.

## **CONCLUSION**

Because Schmitt had sufficient funds to pay the requisite filing fees without

depriving himself of the necessities of life, but chose instead to squander them on

discretionary items, and because he failed to show that his appeal is not frivolous or

malicious, the Court should vacate his indigency status.

Respectfully submitted,

NANCY ANKERS WHITE
Special Assistant Attorney General

DATED: November 13, 2006                    C. Raye Poole
                                            /s/ C. Raye Poole

                                            B.B.O. # 632719
                                            Department of Correction
                                            Legal Division
                                            70 Franklin Street, Suite 600
                                            Boston, MA 02110
                                            (617) 727-3300 ext. 147

12

<u>Certificate of Service</u>

I, C. Raye Poole, counsel for the defendants-appellees, hereby certify that on this 13th day of November 2006, I served a copy of the above motion by first class mail, postage prepaid, on Joseph Schmitt at his last known address, Massachusetts Treatment Center, 30 Administration Road, Bridgewater, Massachusetts  02324.

<u>/s/ C. Raye Poole</u>
C. Raye Poole